DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY,

## JUNE TERM 1869.

---

### PHILIP W. CRATER v. ABRAHAM M. BINNINGER.

1. In cases of fraud, the true rule of damages is, that the wrong-doer must answer for those results, injurious to the other party, which must be presumed to have been within his contemplation at the time of the commission of the fraud.
2. The plaintiff having been enticed by the deceit of the defendant to enter into an oil speculation—*held*, that the defendant was responsible for the moneys put into the scheme by the plaintiff in the ordinary course of the business, and which moneys were lost.
  *Held further*, that from such moneys must be deducted the value of the interest which the plaintiff retained in the property held by those associated in the speculation.

---

Error to the Supreme Court.

The defendant had purchased, in connection with another party, a certain tract of land situate in Pennsylvania, in the district known as the Petroleum Oil Territory. Proposing to form an oil company, he applied to the plaintiff and solicited him to become a member. The defendant represented that the original cost of the land was $28,000, and that the

513

scheme would require a working capital of $4000, making the amount of immediate investment $32,000. His proposition was to divide the property into eight shares of $4000 each, and one of which he offered to the plaintiff, which the latter accepted and paid for. In a few months the associates, finding themselves in debt for expenses incurred in the enterprise, each paid in the further sum of $500. A small portion of the property was subsequently sold, with the assent of all the members, for the sum of $16,000. The property purchased, originally, had been conveyed to the defendant, in trust for the members of the association. The speculation turned out a failure.

The suit was brought for alleged false and fraudulent representations made by the defendant, forming the inducement to the plaintiff to become an associate in the enterprise. The false representation relied on, consisted in the statement that the original cost of the property was $28,000; whereas, the real price paid did not exceed $18,000.

The court at the circuit charged the jury that the proper measure of damages was the entire loss sustained by the plaintiff in this transaction, into which he was inveigled by the fraud of the defendant. The estimate of damages was made on the basis of the original outlay by the plaintiff of $4000, his subsequent advance of $500 with a deduction of $2000, being the one-eighth of the portion of the land sold for $16,000. The residue of the land standing in the name of the defendant, in trust, was not taken into the account.

Bills of exception were sealed, and the case came before this court on a writ of error to the circuit.

For plaintiff in error, *A. W. Cutler* and *Theo. Runyon.*

For defendant in error, *C. Borcherling* and *C. Parker.*

BEASLEY, CHIEF JUSTICE. Upon the argument, one of the grounds in favor of a reversal in this case, which was pressed upon our attention, was, that the measure of damage which

should have been given on the trial to the jury, should have been one eighth of the difference between eighteen thousand dollars, the real cost of the property sold, and twenty-eight thousand dollars, the false price, constituting the fraudulent representation. But I can find nothing in the reason of the thing, nor in the precedents, for the adoption of such a standard. Regarding this case simply as a sale of lands, which is the view most favorable to the contention, this rule could not be, in any case, applied with propriety. The principle of justice, and as I understand of law, is, that the party injured is to be compensated, at least to the extent that redress is awarded judicially, for the actual loss sustained. The effort is to reach this measure as near as possible, and unless, in cases fit for punitive damages, nothing more than this is to be given. But the criterion contended for is in no sense compensation, but a mere arbitrary amount, bearing, it may be, no just relation to the quantum of damage. Let us suppose land costing $5000 to be sold under a false representation that it cost $10,000. Now it is obvious, that the damage which the vendee will sustain, under ordinary circumstances, will be the difference between what he pays for the land and its actual value. If he pay $10,000, the price falsely represented, as its original cost, and it be worth that sum, and he actually sell it at that rate, he will sustain, in point of fact, no damage whatever. Can it be pretended, then. that, in such a state of affairs, sustaining no loss, he would be entitled to recover anything whatever because of the fraud practiced upon him?

Nor can I perceive how this rule sought to be established, can properly be received for the purpose of establishing the ultimate limit to which damages are to extend. There appears no reason for circumscribing the damages of a vendee of property to the difference between the actual and represented cost price of the property. It is obvious, that often his loss will exceed such bound. If the fraudulent representation has been the sufficient cause of the purchase, the actual loss sustained would seem to be the proper and usual

measure of redress. But if, on the other hand, the effect of the fraud has been merely to induce the payment of a larger price than would otherwise have been paid, then there would seem to be some substantial ground for the theory that the sum recovered should be the sum comprised in the over-estimate of the cost of the property. In this latter case, upon the assumption that the sale would have taken place if the truth had been known, all that the fraud produced is the payment by the vendee of an excessive price; the reduction, therefore, of such excess would afford a fair reparation. But where the sale itself is the product of fraud, the vendee may either repudiate the contract, or claim, by way of damage, the difference between the price paid by him and the real value of the property which he has acquired. This I regard as the general and well established rule.

But the present case has peculiar characteristics, which seem to require a modification of the ordinary rule by which damages are measured in cases of fraudulent sales. The plaintiff, in this instance, by reason of the fault of this defendant, became something more than a mere purchaser of real estate. By the fraudulent practice of the defendant, the plaintiff was induced to embark in a speculation. He did not take title to the land : that was placed in the defendant, in trust for the plaintiff and the other associates. The original understanding was, that the land was to be held and improved, and a company was to be formed. The land was retained, except a small portion sold with the assent of all the parties, officers appointed, and expenses incurred. These steps were all taken in conformity with the scheme of proceeding adopted by the parties, in the inception of the business. Starting, then, from the position, that the jury, on the trial of this cause, have found the fact that the plaintiff was induced to enter into this speculation by the falsehood of the defendant, it seems to me clear that in conformity to well settled legal rules, we must hold the defendant answerable for the loss of the moneys which the plaintiff, without fault on his part, lost in this speculation.

The rule to be applied in cases of this character, is, that the defendant is responsible for those results, injurious to the plaintiff, which must be presumed to have been within his contemplation at the time of the commission of the fraud. When the defendant unlawfully enticed the plaintiff into his speculation, he was aware that the plaintiff would put at risk such sums as he might commit to the venture. With this knowledge, by false pretences, he drew the plaintiff in. On what principle is it, then, that the wrong-doer is not to be made to answer for the loss which he must have foreseen as probable, and which would not have happened without his fault? I think, clearly, these damages are not too remote. They would be embraced even within the rule by which damages are admeasured in cases of contracts. This latter rule is thus carefully defined in *Headley* v. *Baxendale*, *Exch.* 341, viz.: "Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive, in respect of such breach, should be such as may fairly be considered either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." This case is the leading one on the subject, and, in a series of recent decisions, has been sanctioned and followed. *Woodyer* v. *G. W. R. Co., L. R.,* 2 *C. B.* 318; *Mullett* v. *Mason, L. R.,* 1 *C. B.* 557; *Cary* v. *Thames Iron Works, L. R.,* 3 *Q. B.* 181; *L. R.,* 6 *Eq. C.* 405; *Portman* v. *Middle ton,* 4 *C. B.* (*N. S.*) 322; *Bramley* v. *Chesterton,* 2 *Id.* 592; *Hamilton* v. *McPherson,* 28 *N. Y.* 76; *Taffin* v. *Colver,* 16 *N. Y.* 494; *Abbott* v. *Gatch,* 13 *Md.* 314.

The rule which these authorities recommend is one of much practical importance, for, as it seems to me, it will, if adopted, materially aid in the application of the abstract principles of the law on this subject to the facts of ordinary litigations. For example, Mr. Greenleaf says: "The damage to be recovered must always be the *natural* and *proximate* conse-

quence of the act complained of." This is the usual state-
ment of the rule, but the difficulty has been to apply this
general proposition to the particular case; for, in any
attempt to examine causes in connection with their effects, it
will be soon apparent that some criterion is necessary by
which to decide what result is proximate and what remote,
in a legal sense, to the given act. The standard set up, by
the decisions above cited, supplies, to a reasonable degree,
this deficiency. The test is, that those results are proximate
which the wrong-doer, from his position, must have contem-
plated as the probable consequence of his fraud or breach of
contract. Thus, to use an illustration of the civilians, if one
should sell timber which should be used to prop up a build-
ing, and, by reason of imperfection in such timber, the
building should fall and be destroyed, the seller, even though
he acted fraudulently in the sale, would not be liable beyond
the difference in value between good timber and that sold.
Under these circumstances, the falling of the building would
be regarded in law as a consequence too remote. But if, on
the other hand, the timber was sold by a carpenter, for the
express purpose of propping up such building, then he would
be answerable for all the damage to the building resulting
from his deceitful representations. The ground of these
opposite results is, that in the former case, the falling of the
building would be held too remote, as a consequence of the
fraud, because such consequence could not be supposed to
have been within the contemplation of the wrong-doer. And
that, in the latter case, the same casualty would be deemed
a consequence proximate to the fraud, from the fact that he
must be presumed to have regarded such an event likely to
follow the act which he did. The rule thus indicated,
although it may not be always easy of application to the
endless variety of affairs which are constantly being presented
for judicial cognizance, appears to be the most eligible which
has heretofore been suggested.

Regarding, then, this as the correct principle, I think the
judge's charge upon this topic, in the present case, was, in

all respects, unobjectionable.    He stated "that the proper measure of damages was the entire loss sustained by the plaintiff in this transaction, into which he was inveigled by the fraud of the defendant."    Such an instruction was in complete conformity with the rule above stated, and, indeed, was but a submission to the ruling of this court in the unreported case of *Littell* v. *Manning.*    It is to be borne in mind that the fraud complained of consisted in a false statement, which involved a fact which was much more apt to delude the plaintiff than the simple representation of the original cost of the premises.    I consider the probable cause of the plaintiff's accession to the speculation in question, was the assurance received by him that he was to be put on the same footing with the defendant.    The plaintiff appears to have had confidence in the defendant; nothing, therefore, was more likely to attract him to the scheme, than the persuasion that his own risk was no greater than that of his companion.    But this was a pure delusion, for the plaintiff risked the whole of his original investment, while the defendant took his share, free of all expense.    By force of this deceit, the plaintiff became one of the associates in the enterprise, and, under its influence, he not only paid his quota of the original pretended price of the lands, but made his subsequent advance.    These outlays were the natural results of the defendant's fraud, and, consequently, in accordance with the legal rule already propounded, he should be compelled to reimburse them to the plaintiff.

But upon the argument another point was taken by the plaintiff in error.    It was insisted, that the value of the interest of the plaintiff in the lands which remain unsold, should have entered into the estimate of damages made by the jury.    I am inclined to think this matter was not mooted at the trial, for the probability is that this land is possessed of a mere nominal value, and it thus escaped the attention of the counsel, jury, and court.    There was no proof as to its value at the time of the trial, but as it cost, originally, at least ten thousand dollars, we cannot, in the absence of all

evidence, say that it is worthless. The plaintiff still owns, in equity, at least one-eighth of this property. It cannot be denied, therefore, that, to the extent of the value of such share, the verdict is in excess of what is justly due him. I think, then, it was an error in the charge to the jury, not to embrace this subject. As I have already remarked, there is just ground for the belief that the attention of the court was not called to this subject; but the difficulty is, that the judge has signed a bill of exceptions, containing a general allegation that the charge on the point of the measure of damages was erroneous. Such a bill ought not to be allowed, for, as has been repeatedly said by this court, exceptions, to be legal, must be specific. But as the bill in this case comes before us in this general form, this court has no power to limit the range of objections.

In my opinion, the value of the plaintiff's interest in the land referred to, was an essential element in a legal ascertainment of the damages in this case, and, as such interest was not included in the scheme for the estimation of damages given by the court to the jury, on this account I think there was error, and, consequently, the judgment should be reversed.

THE CHANCELLOR.    The action was for damages sustained by the false and fraudulent representations made by Binninger, the defendant below, to Crater, as to certain lands, upon the sale of an interest in them to Crater. The false representation relied on was as to the cost. The lands contained petroleum wells, and Binninger proposed to Crater to sell him one-eighth interest in the purchase, at twenty-eight thousand dollars, the value of the lands, and four thousand dollars for improvements to be put upon them; he represented that twenty-eight thousand dollars was the original cost of the lands to him, and that he was willing, as a favor to Crater, who was an old friend, to let him in the undertaking at the cost price. Crater who knew nothing of the lands, but had confidence in the integrity and judgment of Binnin-

ger, and was willing to embark in the undertaking with him at the cost price, purchased the share at four thousand dollars, and the lands were conveyed to trustees for the use of those who engaged in the enterprise. Crater would not have engaged in it if he had not believed that this was the cost of the lands, and that he was going in at the original cost. The actual cost of the lands to Binninger was only about eighteen thousand dollars, and this was known to Binninger at the time he made the representations. Crater afterwards paid five hundred dollars to the trustees for improvements to be made on the property, which were assessed alike upon all those interested; he paid this after he had learned that the real cost of the property was eighteen thousand dollars, and not twenty-eight thousand dollars, as represented to him by Binninger. The trustees sold part of the property for sixteen thousand dollars; the residue remains, for anything that appears, in the hands of the trustees.

On the trial at the circuit, the judge charged the jury that they must assess the damages of the plaintiff below, at the whole loss which he sustained *in the transaction* into which he had been inveigled by the fraud of the defendant. And that the basis of their verdict must be the four thousand dollars originally paid by him, deducting two thousand dollars. his share of the price of the part sold, and adding the five hundred dollars paid by him as an assessment, with interest properly calculated on these amounts.

Exceptions were taken to this charge as to the damages.

· Upon these principles adopted by the circuit judge, the directions were wrong. If the true rule was the whole damages sustained by the plaintiff below, he should have directed allowance to have been made for the value of the property yet remaining in the hands of the trustees for the benefit of Crater.

The verdict or judgment in this case will not deprive him of the right to his share of the proceeds of that part, whatever they may be.

But I think the rule laid down, although the proper rule

in some cases, is not the rule to be applied in this case. The proper rule upon principles of equity and justice to be applied in all cases of fraudulent misrepresentations in sales, is to assess damages to the amount of the loss that was occasioned by the misrepresentations. In some cases these are the same as the loss in the whole transaction, in others not. They may be less or greater. They may be serious in amount when the whole transaction proves profitable—they may be slight when the loss in the operation is great.

If a vendor represents that the assessments on lots sold are all paid, and the representation is false, the purchaser can recover if the assessments are but five hundred dollars, and he makes a profit of five thousand dollars on the transaction. But can only recover five hundred dollars if he loses five thousand dollars on the transaction. The true rule is the loss occasioned by the fraud and falsehood. This is the rule laid down by the Supreme Court of New York, in an able opinion by Justice Cowen, in *Cary* v. *Gruman*, 4 *Hill* 627, and in the opinion of Justice Bronson, in *Van Epps* v. *Harrison*, 5 *Hill* 63. And by the Supreme Court of Massachusetts, in *Medbury* v. *Watson*, 6 *Metc.* 257.

The rule laid down in many cases of sale, that the damages should be the difference in the value of the thing sold, as it was represented to be, and the value as it really was at the sale, is upon this principle. *Stiles* v. *White*, 11 *Metc.* 358. But that rule will not apply here, nor in many other cases. In this case the lands were just as valuable if Binninger only paid for them the price he did pay, as if he had paid the price he alleged he had paid. The principle is the same in all cases, but the rule or manner of applying it must differ with the circumstances of each case.

In this case Crater was willing to go in with Binninger at the cost price. Had Binninger told him truly that the cost price was eighteen thousand dollars, he would no doubt have been willing to go in at that price; and would have paid at that rate, and if any subsequent loss was sustained, would have had no claim against Binninger; and the true

measure of damages appears to me to be the excess which he was induced to pay by the false and fraudulent representation of Binninger. If that was the difference between eighteen thousand dollars and twenty-eight thousand dollars, the one-eighth would be one thousand two hundred and fifty dollars, which, with the interest, would be the real damage. And the plaintiff below would be entitled to recover these damages, although he had made double the amount out of the enterprise as clear profit. If, however, the jury should believe that Crater, if he had been told the real price, would not have entered into the transaction at that price, but would have taken a share in the lands only at the higher price, then his embarking in the transaction at all was the result of the fraud of Binninger, and the rule of the judge at the trial was the correct one, but it should have been so stated to the jury.

For these reasons the judgment should be reversed, and the record remitted that a *venire de novo* may issue.

*For reversal*—The CHANCELLOR, CHIEF JUSTICE, BEDLE, DALRIMPLE, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, OGDEN, OLDEN, WALES. 11.

*For affirmance*—KENNEDY. 1.

CITED *in Wolcott, Johnson & Co.* v. *Mount,* 7 *Vr.* 269; *S. C.,* 9 *Vr.* 501.