EDWARD W. MARTIN, RESPONDENT, v. ALFRED F. BALD-
WIN, APPELLANT.

Submitted December 11, 1916—Decided March 5, 1917.

The plaintiff was owner of some real estate, which he was induced
    to part with, by the defendant, in exchange for a bond and mort-
    gage for $3,000 which it was represented to him was made by
    a responsible business man, who was owner of the property.
    The fact turned out to be, that the so-called owner was a
    "dummy," who was paid by defendant to represent himself as
    owner, and to exercise acts of ownership about the property, as
    well as to execute the bond and mortgage, which was without
    consideration, and valueless. In an action for deceit, the jury
    having found for the plaintiff, no errors of procedure or errors in
    the charge of the court being apparent, the judgment is affirmed.

On appeal from the Supreme Court.

For the respondent, *Jacob L. Newman.*

For the appellant, *Howe & Davis.*

The opinion of the court was delivered by

MINTURN, J. The plaintiff, Martin, was owner of two lots
in East Orange, and the defendant, Baldwin, according to the
allegations of the complaint, induced him to part with the
property in consideration of the assignment to him of a bond
and mortgage for $3,000 upon a house and lot in Montclair,
the mortgage being a second mortgage held by one P. Frank
Stone, a client of the defendant. The representation which
induced the sale was that the Improved Building and Loan
Association of Newark held upon the Montclair property a
mortgage for $5,000; that the property was of the value of
$11,000, and that Stone had purchased it at that figure, pay-
ing the difference above the first mortgage in cash, from the
Fairchild-Baldwin Company, with which the defendant was
connected; that the property was about to be purchased from
Stone by one James Hendrickson, who was to give Stone the

$3,000 mortgage; that Hendrickson was a responsible plumber, who could pay the charges incident to the mortgage, and would discharge the second mortgage by monthly payments until its final payment at maturity on July 1st, 1915; that the mortgage was a *bona fide* security, and represented an equity in the property over and above the first mortgage; that Hendrickson had purchased it for the purpose of a home and residence which he intended to occupy.

In pursuance of these representations a written agreement was executed between the parties for the mutual transfers of the respective titles, and, subsequently, the actual transfers were made. Plaintiff thereafter sold the bond and mortgage to one Marsh, and guaranteed its payment; subsequently, Baldwin called upon Marsh and informed him that Hendrickson was embarrassed financially, and was unable to meet the interest charges on either of the mortgages, and offered Marsh a conveyance of the mortgaged premises, for the purpose of saving the expense of a foreclosure, which proposal Marsh accepted, and on the same day conveyed the premises to the plaintiff. These allegations are supplemented by a general charge that the scheme thus outlined was concocted by Baldwin and Stone, knowing its essential falsity, for the purpose of inducing the plaintiff to part with his property, for an exchange that in truth possessed no market value, and by means of this deceit thus cheated and defrauded the plaintiff. Upon the trial a nonsuit was granted as to Stone, and the case proceeded against the defendant, Baldwin.

There was ample testimony adduced at the trial to support the allegations of the complaint, as to Baldwin. It was shown by Hendrickson himself that he was in reality a hired "dummy," without any business or financial responsibility, drafted into the service of defendant, for the sole purpose of assuming a status of business and financial responsibility, which he did not in reality possess; that he had not advanced any consideration for the property above the first mortgage, and that the market value of the second mortgage was merely nominal; that he was paid $25 by the Fairchild-Baldwin Company at the request of defendant for his services in

executing the bond and mortgage, and that in part performance for the consideration he assumed the position of owner of the property; and upon a visit which he was directed to make thereto that he divested himself of his working clothes, and clothed himself in raiment compatible with the deceptive role, in which he was thus called upon to masquerade.

This situation, supplemented by testimony from which the jury might infer all the elements of a scheme to cheat and defraud the plaintiff, presented a *prima facie* case of deceit.

To this was superadded the fact that the mortgaged premises were sold by the first mortgagee at sheriff's sale under foreclosure, and the mortgage of the plaintiff being thereby extinguished became practically valueless. The denial of these essential facts by the defendant manifestly presented a jury question which was resolved in favor of the plaintiff.

We have examined the exceptions presented by the record, as to the admission and exclusion of testimony, and it must suffice to say that in no specific instance do we find the rulings in that regard erroneous.

The refusal of the court to admit in evidence a contract between the Fairchild-Baldwin Company, the former owner of the exchanged real estate, with one Wakeman, for the purpose of showing the value of the property, was not improper, since the issue involved was not the true value of the property exchanged, but whether the representations as to Hendrickson upon which the plaintiff had been induced to accept the mortgage and part with his property had any basis in fact. In fair dealing the plaintiff was entitled to know the real owner of the mortgaged property, and his business and financial status, for the purpose of determining the value of his bond, as an added asset to the value of the property; or at least he was entitled not to have the real character and standing of the alleged owner misrepresented to him; and that inquiry presented the gravamen of the action.

Nor do we think the court erred in refusing to charge, that if the defendant was merely the agent of the Fairchild-Baldwin Company, which was acting for Stone, no liability for his individual misfeasance could attach to him. The law is other-

wise. 2 *Corp. Jur.* 826, and cases cited; 20 *Cyc.* 85, and cases cited.

In *Bennett* v. *Ives,* 30 *Conn.* 329, it was held that "the actual perpetrator of a positive and obvious wrong can never exonerate himself from personal liability by showing that he was acting as the agent or servant of another, or even by his superior's command." This rule was adopted in *Carew* v. *Rutherford,* 106 *Mass.* 1, and adverted to and adopted in this state in *Horner* v. *Lawrence,* 37 *N. J. L.* 46; in *Bocchino* v. *Cook,* 67 *Id.* 467, and in *White* v. *New York, Susquehanna and Western Railway Co.,* 68 *Id.* 123.

This test of the defendant's liability imposed upon him the duty, at least, to refrain from actively perpetrating a fraud in his own interest, or in the interest of his principal, to the detriment and damage of another.

The charge of the trial court was in consonance with this rule of law and morals, and our attention has not been called in the exceptions to any erroneous application of it.

Nor are we able to discover in the charge any misdirection as to the rule of damages applicable to the situation. The rule itself, settled beyond controversy, by years of repeated adjudication, and the critical analysis of text-writers, is stated generally to be compensation adequate to the loss sustained. The effort always is to so apply the rule as to produce reparation in the individual case; and with that purpose in view, appellate pronouncements in particular cases might be multiplied.

For our purpose the potent analysis and wealth of illustration, applied by Chief Justice Beasley and Chancellor Zabriskie in *Crater* v. *Binninger,* 33 *N. J. L.* 513, supply the rationale of the doctrine, and settle the rule in this state beyond the pale of controversy.

The defendant's application of the rule is based upon the notion that the transaction was, in essence, the exchange of real estate; but, quite manifestly it was simply the loss of the bond and mortgage, plus the necessary and incidental outlay in living up to the transaction on the part of the plaintiff.

Our examination of the various elements and items of loss which entered into the plaintiff's calculation of damage, the correctness of which was left to the jury to determine, satisfies us that in this respect no error was committed.

The judgment will be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Williams, Gardner, JJ. 14.