PATCO PRODUCTS, INC., PLAINTIFF-RESPONDENT, v. HEDWIG ELLA WILSON, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF ROBERT HARTMANN, DECEASED, FRIEDA HARTMANN, ANTHONY J. J. A. WILSON AND WILLIAM S. STUHR, RECEIVER IN BANKRUPTCY OF MULTI-PRODUCTS TOOL COMPANY, A CORPORATION, DEFENDANTS-APPELLANTS.

Argued October 23 and 30, 1950—Decided November 20, 1950.

*Mr. George R. Sommer* argued the cause for respondent.

Mr. *Felix Rospond* argued the cause for the individual appellants (*Messrs. Rospond & Rospond*, attorneys).

Mr. *John F. Lynch, Jr.*, argued the cause for appellant William S. Stuhr, receiver in bankruptcy of Multi-Products Tool Company (*Mr. Edward J. O'Mara*, attorney).

The opinion of the court was delivered by

CASE, J. The individual defendants, as a partnership doing business under the name of Multi-Products Tool Co., engaged in the transactions hereinafter mentioned. They later formed the corporation Multi-Products Tool Company, which is now in process of reorganization, appearing in this litigation by William S. Stuhr as trustee under Chapter X of the Federal Bankruptcy Act. The corporation took over the assets and. liabilities of the partnership and is without interests essentially different from those of the other defendants and appellants.

The case turns partly upon whether, factually, there was one or were two contracts between plaintiff and defendants. Plaintiff was the owner of a patented design for a heater plug and contracted with Kahn & Kooba Mfg. Co. to sell and deliver to that company one million sets of the assembly constituting the plug. In order to fulfill that contract plaintiff, in March, 1946, entered into a contract with the defendants whereby the latter were bound to manufacture the essential mold with appurtenances and also, from that mold, the one million plugs for Kahn & Kooba Mfg. Co. Defendants made the mold but otherwise breached the contract, professing inability to comply therewith, and plaintiff was thereupon released by Kahn & Kooba Mfg. Co. from all obligations to the latter company. Later, in November, 1946, the defendants informed plaintiff they were then able and willing to make and deliver the plugs and suggested that plaintiff secure a new purchaser, whereupon plaintiff effected a contract for the sale of one million plugs with Westchester Brickote Products Co., Inc. Defendants, knowing that plaintiff had bound itself to deliver to that purchaser one million plugs on a

"hurry" order undertook to make the goods and gave assurance that the job would "be running in a day or two." Again the defendants made a deliberate breach, and did so on notice that plaintiff would thereby incur a loss of $32,000 in profits. There were the additional circumstances that defendants refused plaintiff's demand to surrender the mold, which was essential to the manufacture of the product, and that defendants surreptitiously sold a large number of plugs, made from plaintiff's mold, to plaintiff's former customer, Kahn & Kooba Mfg. Co.

Plaintiff brought this suit to restrain defendants from the manufacture and delivery of the plugs to other than plaintiff, to compel the delivery of the mold with all the manufactured plugs, to make an accounting and to compensate plaintiff for losses sustained by it.

The matter came on for trial in the Superior Court, Chancery Division, Essex County, where judgment was awarded plaintiff in the sum of $40,000, to wit, loss on the Kahn & Kooba contract, $14,250, loss on the Westchester Brickote Products Co., Inc., contract, $32,000, total $46,250; less adjustments with respect to the molds, $6,250; net total to plaintiff $40,000 and possession of the molds. Appeal was taken by defendants to the Appellate Division and was certified to us on our own motion.

We have studied the allegations of the complaint and of the answers, the provisions of the pretrial order, the proofs and the comments made by counsel concurrently with the introduction of the proofs, and the arguments made on paper and orally before us and have come to the conclusion that there were two contracts made between the plaintiff and the defendants, one with respect to Kahn & Kooba Mfg. Co. and the other with respect to Westchester Brickote Products Co., Inc., but that—and this is where our decision differs from that of the court below—implicit within the second contract was the waiver by plaintiff of the damages arising from the breach of the first. Thus, the surviving obligation upon the defendants was the manufacture of one million plugs of the

· patented design for delivery to the Westchester Brickote Products Co., Inc., the same to be made from a mold which was the property of plaintiff and was then in the possession of the defendants. This arrangement was to the manifest advantage of both parties; it provided for plaintiff a greater profit than it would have made on the earlier sale and a greater sum than it could have collected from defendants on the breach; and it gave defendants an opportunity to replace a liability with a profit.

██ There was no available market from which the goods could be procured or a market or current price be ascertained (cf. the Uniform Sales Act, R. S. 46:30–73). The loss directly and naturally resulting from the breach was the loss of profit on the defaulted Westchester delivery; and that profit was the difference between the defendants' contract price for manufacture and delivery and Westchester's contract price on the purchase. There were, to be sure, the special circumstances, already mentioned, of retained mold and unlawful sale by defendants of plugs made therefrom. Thus was the defendants' breach accentuated and emphasis given to the applicability of the common law rule that the recoverable damages are such as may reasonably be supposed to be in the contemplation of the parties at the time they made the contract. *Pope v. Ferguson,* 82 *N. J. L.* 566 (*E. & A.* 1911); *Marcus & Co., Inc., v. K. L. G. Baking Co., Inc.,* 122 *N. J. L.* 202 (*E. & A.* 1938). It will be noted that the procurement by plaintiff of the Westchester contract of sale and purchase was effected at defendants' suggestion and on the assurance that they were then ready to produce. At the time plaintiff made the second contract the defendants knew that this new purchaser had been procured, that the order was for delivery to it, that the purchaser, because of the then current demand, was in a great hurry for the product and that there was no available market from which a market or current price of the patented article could be deduced.

Applying the rule stated above, we determine that the difference between the cost to plaintiff of having the articles

made and the agreed price from plaintiff to Westchester was, as found by the court below, $32,000. From that sum should be deducted the credit to plaintiff, also as found below, of $6,250, leaving a total sum due plaintiff of $25,750. The plaintiff's money judgment will be reduced to that figure, with costs as taxed below. The direction to defendants to deliver the mold to plaintiff is retained.

The individual appellants argue that the judgment should be reduced to $6,750; the corporate appellant contends that it should be reduced to $8,000; the respondent urges that it should not be disturbed. The contention of no party is completely sustained. No costs are allowed on the appeal.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For affirmance*—Justice WACHENFELD—1.