DAVID ZELIFF, PLAINTIFF-RESPONDENT, CROSS-APPELLANT, v. ALFONSO SABATINO, FILOMENA SABATINO, AND A. ALBERT URDANG, DEFENDANTS-APPELLANTS, CROSS-RESPONDENTS.

Argued February 23 and March 1, 1954—Decided March 29, 1954.

On appeal from the Superior Court, Appellate Division, whose opinion is reported in 27 *N. J. Super.* 13.

*Mr. Harold D. Feuerstein* argued the cause for the appellants, cross-respondents, Alfonso Sabatino and Filomena Sabatino (*Messrs. Lipstein and Lipstein,* attorneys).

*Mr. Abraham I. Mayer* argued the cause for the appellant, cross-respondent, A. Albert Urdang (*Messrs. Mayer and Mayer,* attorneys).

*Mr. Jerome C. Eisenberg* argued the cause for the respondent, cross-appellant (*Mr. Mervin G. Wiener,* attorney; *Messrs. Eisenberg and Spicer,* of counsel; *Mr. Jerome C. Eisenberg* and *Mr. Ralph Neibart* on the brief).

The opinion of the court was delivered by

OLIPHANT, J.  This action was one for damages allegedly resulting from a written representation made by defendants in connection with the sale of real property, later determined to be false.  Judgment was entered upon a jury verdict in plaintiff's favor in the sum of $4,200 against all of the defendants.  The defendants appealed and the Appellate Division held that defendants' liability had been established but "that there was no legal proof of damages" and remanded the action for a new trial as to damages only.  The defendants petitioned for certification and the plaintiff cross-petitioned therefor.  Both petitions were granted by this court.

Plaintiff paid $71,750 for the property in question which he wanted to acquire as a safe investment and to give him an assured income.  He had been furnished an analysis of the annual income and expenses of the property, one of the expense items being the cost of fuel oil for the period from February 1, 1949 to February 1, 1950.  Such representation as to this item was contained in the final contract of sale and the affidavit of title recited that "the representations contained in the contract shall remain effective between the parties."

The plaintiff testified that an examination of the submitted income and expense figures disclosed that he would have a return of 6.9% on his investment of $71,750, but that after taking possession of the property he discovered that his fuel bills were higher than had been represented.  Upon investigation he discovered that fuel oil bills for the period from February 1, 1949 to February 1, 1950 were actually $282.74 in excess of that represented.  Testimony by an expert was to the effect that a return on the investment of 6.7% or 6.9% was reasonable and that a reduction of net income of $282.74 would result in a loss to the buyer of $4,220 if capitalized at 6.7%.

We agree with the Appellate Division that "A review of the record shows there is ample evidence to support the verdict insofar as defendants' liability is concerned" but disagree with that court in its holding that this State is

definitely committed to the "out-of-pocket" rule as to damages in an action grounded in fraud or deceit and that "there was no legal proof of damages."

We rather are of the opinion that this State is not so inexorably wedded to the "out-of-pocket" rule as to the measure of damages that "the benefit-of-the-bargain" rule cannot be applied where justice requires. See *Crater v. Binninger*, 33 *N. J. L.* 513 (*E. & A.* 1869) ; *Martin v. Baldwin*, 90 *N. J. L.* 241 (*E. & A.* 1917). In *Schwartz v. Rothman*, 1 *N. J.* 206 (1948), while not deciding the question Justice Wachenfeld, speaking for this court, at least intimated that there was no hard and fast rule in this State in saying:

"* * * we encounter an alleged conflict of decisions as to the correct principle. Recovery for the difference between the price paid and actual value of the property acquired, commonly known as the 'out-of-pocket' rule was approved in *Crater v. Binninger*, 33 *N. J. L.* 513 (*E. & A.* 1869) ; *Duffy v. McKenna*, 82 *N. J. L.* 62 (*Sup. Ct.* 1912) ; *Mitchell v. Bassett*, 99 *N. J. L.* 110 (*E. & A.* 1924) ; *Curtiss-Warner Corp. v. Thirkettle*, 101 *N. J. Eq.* 279 (*E. & A.* 1927). On the other hand, in *Batura v. McBride*, 75 *N. J. L.* 480 (*E. & A.* 1907), the recovery was for the difference between the price paid and the value of the property had the representations been true. This is commonly designated as the 'benefit-of-the-bargain' rule."

As to some cases what is called the "out-of-pocket" rule may furnish just and adequate compensation; in others the so-called "benefit-of-the-bargain" rule may be the more just and accurate. The just method of determining damages necessarily varies with the facts of the particular case, and damages in a case such as this, which deals with an overpayment in the purchase price of property as the result of a fraudulent misrepresentation, are to be assessed in the amount of the loss occasioned by that misrepresentation. No rule of damages capable of precise application in all cases can be laid down and followed. If a charge of fraud is sustained, all damages which are the proximate result of the wrong should be awarded. "Regardless of whether the out-of-pocket rule or the benefit-of-the bargain rule is the correct one, the fundamental rule universally employed" * * * is that "The victims of fraud are entitled to compensation for

every wrong which was the natural and proximate result of the fraud." If one or the other rule is inflexibly adhered to, while certainty would be achieved it would in many instances be at the expense of justice. *Selman v. Shirley,* 161 *or* 582, 85 *P. 2d* 384, 91 *P. 2d* 312, 124 *A. L. R.* 1, 16 (*Or. Sup. Ct.* 1939).

The correct principle is, we believe, as stated in 24 *Am. Jur., Fraud and Deceit,* § 226, *p.* 54:

"The rule governing the measurement of damages in fraud actions should be flexible, and the principles applied in a flexible manner. A technique should be developed where both the benefit-of-the-bargain rule and the out-of-pocket-loss rule shall be available as formulas, so that one or the other may be used as the circumstances of the case may demand. No difficulty results from the application of the principle of flexibility, and it does not create uncertainty. A formula which combines the fundamental principle of proximity with the principle of flexibility is as follows: (1) If the defrauded party is content with the recovery of only the amount that he actually lost, his damages will be measured under that rule; (2) if the fraudulent representation also amounts to a warranty, recovery may be had for loss of the bargain because a fraud accompanied by a broken promise should cost the wrongdoer as much as the latter alone; (3) where the circumstances disclosed by the proof are so vague as to cast virtually no light upon the value of the property had it conformed to the representations, the court will award damages equal only to the loss sustained; and (4) where the damages under the benefit-of-the-bargain rule are proved with sufficient certainty, that rule will be employed."

The essential factor in plaintiff's purchase of this property was net return, which defendants well knew. The resultant loss, therefore, is that sum which, when subtracted from the purchase price paid, produces the sum which would yield the same net return anticipated by the plaintiff when he made his purchase. That sum would be computed by the capitalization of reduction in net income. In other words, the sum required to fairly compensate the plaintiff for the loss suffered as the natural and proximate result of the fraud would be the amount of capital required to yield the annual differential in income at the anticipated rate of return, provided, of course, that the proofs establish that the rate of return was reasonable. Such proof is in the record.

The trial court charged, and correctly, that "* * * The plaintiff is entitled to be reimbursed for the difference between what he paid for the property and the diminution in its value stemming from the false statement of the cost of fuel oil."

There was competent legal evidence to sustain the verdict as rendered with respect to damages and we therefore reverse the judgment of the Appellate Division insofar as it directs a new trial as to damages only and remand the cause to the Superior Court, Law Division, Essex County, with direction that the judgment entered therein be reinstated.

BURLING, J. (dissenting). I am in accord with the conclusion of the majority that this State is not so inexorably wedded to the "out-of-pocket-loss" rule as to the measure of damages that the "benefit-of-the-bargain" rule cannot be applied where justice requires. The appropriate general rule as to damages in New Jersey was expressed in *Patco Products, Inc., v. Wilson,* 5 *N. J.* 543, 547 (1950), as "such as may reasonably be supposed to be in the contemplation of the parties at the time they made the contract." Potential profits where based on sound fact and not upon mere opinion evidence without factual support have been recognized as a proper measure of damages if "capable of being estimated with a reasonable degree of certainty." *Rempfer v. Deerfield Packing Corp.,* 4 *N. J.* 135, 144 (1950). *Cf. Louis Schlesinger Co. v. Rice,* 4 *N. J.* 169, 179 (1950). In tort cases profits which are remote, speculative or uncertain are neither an element of damages nor evidence of damages. *Woschenko v. C. Schmidt & Sons,* 2 *N. J.* 269, 278-279 (1949).

In the present case the evidence is not adequate to form more than a basis for mere conjecture or speculation. The principal reason for this situation is that there is an absence of proof as to the value of the property acquired by the plaintiff which forms the basis for the action. Whether it is worth more or less than the plaintiff paid for it is not revealed. This principle of law was expressly declared in *Lams v. Fish,* 86 *N. J. L.* 321, 324 (*E. & A.* 1914), wherein the

former Court of Errors and Appeals affirmed a judgment of nonsuit in this type of action. This settled law was reiterated by the former Court of Errors and Appeals in *Bingham v. Fish*, 89 *N. J. L.* 688, 690 (*E. & A.* 1916). And it was inferentially recognized in *Turon v. J. & L. Construction Co.*, 8 *N. J.* 543, 561 (1952), wherein this court held:

"The rule obtains in some jurisdictions that while nominal damages are allowable in actions in tort for strict trespass in vindication of the right, an action in case merely—*i. e.*, for damages actually sustained—is not maintainable without proof of actual damage."

The principle above adverted to has been expressed in the following language:

"Since the modern action of deceit is a descendant of the older action on the case, it carries over the requirement that the plaintiff must have suffered substantial damage before the cause of action can arise. Nominal damages are not awarded in deceit, and there can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been. * * *" *Prosser on Torts* (1941), *sec.* 90, *p.* 768.

"* * * In the case of deceit, contrary to other intended wrongs, no damage is 'presumed,' that is, there can be no action for a recovery of nominal damages. Unless the plaintiff can show an actual pecuniary loss, he can recover nothing. Fraud without actual damage is not actionable. * * *" *Harper on Torts* (1933), *sec.* 226, *p.* 649.

One of the elements of action for deceit is that the plaintiff suffered damage from the action he was induced to take. 2 *Cooley on Torts* (4th ed. 1932), *sec.* 348; *Prosser on Torts* (1941), *sec.* 85, *p.* 705; *Harper on Torts* (1933), *sec.* 217, *pp.* 444-445; *Bigelow on Torts* (1907), *pp.* 73-74; *Kerr on Fraud and Mistake* (1872), *pp.* 324-325.

In the present case the evidence supports a finding that one item of expense was greater than represented. The effort of the plaintiff however is to measure his damages by capitalization of this item. This would seem a proper measure had there been proof that the actual value of the property were equal to or less than the price he paid therefor. If the prop-

erty is worth more, then the matter is conjectural for the excess in value over what he paid would reduce or perhaps entirely wipe out the alleged capitalized loss. In *Batura v. McBride, 75 N. J. L.* 480 (*E. & A.* 1907), unusual circumstances permitted a variance from this norm which is not available to the plaintiff under the facts adduced in the present matter.

For these reasons the trial court should have granted the defendants' motions for judgment of dismissal. Therefore I am of the opinion that upon this determination on appeal it devolved upon the Superior Court, Appellate Division, to declare the judgment which the law imposes and to enter judgment for the defendants. *Cf. Miller v. Bd. of Chosen Freeholders, Hudson County,* 10 *N. J.* 398, 415 (1952); *Jaroszewski v. Central Railroad Co., New Jersey,* 9 *N. J.* 231, 236 (1952). The judgment of the Superior Court, Appellate Division, which remanded the matter for new trial, should be reversed and the matter should be remanded for entry of judgment for the defendants.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, JACOBS and BRENNAN—4.

*For concurrence as to Alfonso and Filomena Sabatino and for dismissal as to A. Albert Urdang*—Justice HEHER—1.

*For reversal and dismissal of complaint*—Justice BURLING—1.