ARNOLD L. PALMIERE, ANTHONY J. LA SALA, FRANK A. LA SALA, ANTHONY COMO AND JOHN COMO, PLAINTIFFS-APPELLANTS AND CROSS-RESPONDENTS, v. MICHAEL FORTE AND FRANK B. CARBONE, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS, AND NICOLA CARONA, TREET INDUSTRIES, INC., A DELAWARE CORPORATION, TECHNICAL MARKETING ASSOCIATES, A PENNSYLVANIA CORPORATION, AND RAYMOND E. LIBERATI, DEFENDANTS.

Argued March 17, 1970—Decided June 1, 1970.

*Mr. Robert H. Greenwood* argued the cause for plaintiffs-appellants and cross-respondents.

*Mr. Richard Roth* argued the cause for defendants-respondents and cross-appellants.

The opinion of the Court was delivered

PER CURIAM. ▉ Plaintiffs ("the La Sala group") sought money damages based on the falsity of an express representation made in a written agreement providing for their investment in a business enterprise, defendant Treet Industries, Inc. ("Treet"), owned by the defendants Forte, Carbone and Carona ("the Treet stockholders"). The trial court, sitting without a jury, found for the defendants. On plaintiffs' appeal, the Appellate Division divided, in an unreported opinion. The majority reversed and remanded for a new trial. The dissenting member agreed there should be a reversal, but felt no new trial was required because plaintiffs were entitled to judgment by reason of the misrepresentation of a material fact. Plaintiffs appealed to this court by reason of the dissent and urge the adoption of the view taken in the dissenting opinion. Defendants Forte and Carbone cross-appealed, contending that the trial court was correct in its disposition. We agree with the dissenting judge.[1]

---

[1] Defendant Carona had filed a separate answer and was represented at the trial by separate counsel. He was served with plaintiffs' notice of appeal to the Appellate Division, but made no appearance nor filed any brief therein. Nonetheless he was affected and bound by that court's decision. However, he was not served with plaintiffs' notice of appeal to this court nor did he join in the cross-appeal. By reason thereof, relief accorded to plaintiffs here cannot extend against him.

The factual and legal situation is fundamentally a simple one, although unnecessarily complicated and confused at the trial level. There was little or no dispute as to the pertinent facts, although not found completely or with entire clarity by the trial judge. Supplementing and clarifying those found by him pursuant to our constitutional grant of necessary original jurisdiction (*Const.* 1947, Art. VI, § V, par. 3; *R.* 2:10–5), the essential facts follow.

Defendants, Forte, Carbone and Carona were the sole stockholders of Treet. All also were engaged in other businesses. Forte, the major investor, and Carbone, a New York lawyer, were residents of that state. Carona lived in New Jersey. The company was engaged in the manufacture of a soft drink additive called "Dari-Treet" at a small leased plant in Lodi, New Jersey. The equipment used in the process had been rented by Forte individually. The company had engaged defendant Technical Marketing Associates, the principal of which was defendant Liberati, based in Pittsburgh, to handle the promotion, marketing and sale of the product.

In the summer of 1966 the business was in serious financial difficulties, owing a large amount of money to creditors and on loans by the stockholders. Operations had been shut down for lack of orders. Sometime in September Liberati advised the Treet stockholders that he had an order for 13,000 cases of the product from chain stores and supermarkets in the Chicago area which required very prompt filling by delivery to a warehouse in that city in order to coincide with planned advertising and other promotional projects. The stockholders were unwilling to invest more money or time in the business which would be necessary to resume production and fill the order. Carona sought out his neighbor, plaintiff Palmiere, and told him about the situation, including the order and the importance of speedy action. Apparently the suggestion was that Palmiere solicit some friends to invest in the enterprise and take over management and control. As a result, Palmiere, his attorney plaintiff Anthony La Sala,

and the other plaintiffs comprising the La Sala group, became interested on the strength ·of the asserted order.

The upshot was that a few days later Anthony La Sala prepared a proposed agreement and, with plaintiff Frank La Sala, met with the Treet stockholders in New York on September 24, 1966 to negotiate its final form. The existence of the order was repeated at the conference, but no writing to support it was produced. Although the record is not entirely clear, it would appear that the Treet stockholders had not at the time received any writing concerning it. It is plain enough, however, that they honestly believed that Liberati had obtained a bona fide order for 13,000 cases. There. is some testimony to the effect that the Treet group suggested to the La Salas that they verify its existence, but that testimony is immaterial in view of the express provisions of the agreement to be mentioned. The final form of the agreement was settled and it was executed on that day by the corporation, the Treet stockholders and the two La Salas. Palmiere signed it in New Jersey a day or two later.[2]

The agreement commenced with the following recitals, which are the crux of the case:

"Whereas Treet Industries Inc. is experiencing serious financial difficulties; and

"Whereas Treet Industries Inc. and the Treet Stockholders have represented to the La Sala Group that Treet Industries Inc. has received an order for immediate delivery of no less than 13,000 cases of its product, 'Dari-Treet'; and

"Whereas, the Treet stockholders have made certain other representations to the La Sala Group regarding the financial status of Treet Industries Inc., such as, but not limited to the following:
[Omitted as not pertinent]
and

"Whereas the La Sala Group is desirous of making a loan to Treet Industries Inc., and having been induced by the representations made by Treet stockholders;"

---

[2]The Comos were not named as parties and were not signatories of the agreement, but the trial court found that they read it before Palmiere signed, invested in the enterprise on the strength of its provisions, were entitled to its benefits and were appropriate parties plaintiff. No question as to this ruling is raised.

The essence of the operative part of the agreement was an undertaking, in effect, by the La Sala group to assume the management and operation of Treet Industries, Inc. in return for a transfer to them of 60% of the stock, coupled with a commitment by the La Sala group to form a new corporation capitalized at no more than $25,000 which would make loans to Treet as required. Provisions for a personal guarantee of such loans by the Treet stockholders and for interest at 6% on the loans were stricken from the draft before execution, but a pledge of the 40% balance of the stock as collateral security for the loans remained in it. While the Treet stockholders received no money for the 60% stock interest, they apparently hoped that, as a result of the financial and managerial transfusion, the business would prove successful in the future, thereby enabling some recoupment of their investment through their retained 40% stock interest.

The La Sala group immediately took over the operation of the business, conferred with Liberati, reactivated the plant and resumed production on an accelerated basis. Although the testimony is not too precise, apparently each of the five invested $4,500 in the enterprise and undertook active duties in connection with it. A new corporation called Mini-Pak Corporation was formed. A short time later Carona joined the five and seemingly also invested the same amount. Some finished product on hand in the plant was sold and each of the five plus Carona was paid back $1,000 of his investment.[3] Several thousand cases were manufactured and shipped to the Chicago warehouse. When they did not move to retailers after several weeks, investigation disclosed that the 13,000

[3]There is no indication in the record as to the capitalization of Mini-Pak. The $4,500 individual investments were spoken of as loans to that corporation. The evidence makes it plain that, instead of Mini-Pak making loans to Treet as the agreement called for, the business actually was operated through Mini-Pak and the invested monies were used for that purpose. No point is made with respect to this deviation and the matter of any fraud on the trade creditors of Treet is not involved in this case.

case order did not exist and never had. The enterprise thereupon collapsed and Treet went into receivership.

This suit was commenced shortly thereafter. Plaintiffs sued Treet and its three stockholders on three theories—"breach of the principal covenant in the agreement", "breach of warranty" and negligent (innocent) misrepresentation—all having reference to the ·representing recitals previously quoted. The corporation did not answer and the action did not proceed further against it. Plaintiffs also sued Technical Marketing Associates and Liberati for breach of covenant and warranty and for conscious fraud, based on representations made as to the order after the La Sala group took over operation of the business. These two defendants defaulted and a judgment was entered against them after the conclusion of the trial involving the Treet stockholders.[4]

■■ Probably because of the negligent misrepresentation theory, the evidence at the trial ranged far and wide. Sight seems to have been lost of the fact that the specific representation, plus detrimental reliance thereon (established also through oral testimony), was precisely and unequivocally set forth in the preamble of a written agreement signed by the Treet stockholders, which could not be varied by parol evidence. There was no doubt the representation was material and false and that plaintiffs actually relied upon it. The defense that the representation was honestly believed, was brought about by the fraud of others and that the La Sala group had no right to rely thereon without independent investigation, which was the substance of the Treet stockholders' position, is entirely unavailing in such circumstances, at least on the breach of covenant or warranty

---

[4]The judgment is in the amount of $46,239, based partly on proofs offered by plaintiffs against the stockholders at the trial and partly on an affidavit subsequently submitted. But see *R.* 4:43–2(b). We are not called upon to consider the form or sufficiency of such damage proofs, the correctness of the theory of damages represented thereby or the propriety of some of the component elements included therein.

theories. The defendants did not seek to reform the agreement.

The trial judge grounded his decision in favor of the Treet stockholders on the conclusion that there was no "warranty", which we also gather included the view that there was no "breach of the principal covenant". He must have inferentially found that a misrepresentation as to the order was made by the Treet stockholders and relied on by plaintiffs, since he said that if he could find "a warranty or a guarantee, express or implied, in the agreement, then there should be a judgment for plaintiffs." But he went on to decide that, because the representing recitals were in the preamble and there was no repetitive affirmative "guarantee" of the order in the operative portion of the agreement, no actionable misrepresentation had been made out. This view was clearly erroneous. See, *e. g., Zeliff v. Sabatino, 27 N. J. Super.* 13, 19–20 (App. Div. 1953), affirmed on this ground, reversed on other grounds, 15 *N. J.* 70, 73–74 (1954), a factually analogous case. *Cf. N. J. S. A.* 12A:2–313 and comment to *N. J. S. A.* 12A:2–105, p. 78. The judge did not pass on liability under the negligent or innocent misrepresentation theory, although he indicated during the trial that he could not conceive that such a basis for relief existed in the law. This was likewise erroneous as a general proposition. *Zeliff v. Sabatino, supra.* We need not discuss the theory or its applicability however, since, as we have indicated, plaintiffs otherwise established a clear case of liability on the theory of an express misrepresentation set forth in the recitals of the agreement.

We find the majority opinion of the Appellate Division quite enigmatic. It recites that the trial court found no warranty as to the order, but does not indicate whether or not it agrees with that conclusion. It then goes on to mention that the trial judge had not dealt with the breach of covenant and negligent misrepresentation theories. The conclusion is reached that "justice requires a full exploration of the essential facts not fully developed at the trial and

a judicial resolution of the aforementioned unresolved issues" and a new trial on all issues is directed. Exactly what the court had in mind and why is not clear to us. In view of our conclusion that plaintiffs are plainly entitled to a judgment of liability on the basis of the clear misrepresentation in the recitals of the written agreement, we, in agreement with the dissenting judge, see nothing calling for a new trial as to liability.

The Appellate Division also referred to another paragraph in the body of the agreement, which reads:

"18. If any of the parties herein have made a material mis· representation to the La Sala Group of any of the facts concerning the assets, liabilities, and present orders of Treet Industries Inc., said party shall automatically relinquish to the La Sala Group all his right title and interest of Treet Industries Inc."

The opinion commented that the trial court had made no findings as to whether that provision was intended by the parties to provide an exclusive remedy in the event of a material misrepresentation, thereby indicating that it should be considered at the directed retrial. The paragraph was not referred to in the pleadings or pretrial order, was only casually mentioned at the trial, and its effect as a defense is not argued in the appellate briefs. Consequently, we again agree with the dissenting judge that it is not an issue in the case.

We are of the opinion, however, that the matter of damages against defendants Forte and Carbone must be retried, a conclusion in which plaintiffs' counsel acquiesced at oral argument. The plaintiffs' theory of damages (see *Zeliff v. Sabatino, supra,* 15 *N. J.* 70) was not articulated in the pretrial order or at trial and the proofs were nebulous, inadequately substantiated and generally unsatisfactory. The theory relied upon and the claimed component elements should be explored with particularity at a new pretrial.

The judgment of the Appellate Division is modified and the case is remanded to the Law Division for further proceedings consistent with this opinion. No costs.

*For modification and remandment*—Chief Justice WEIN-
TRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL,
SCHETTINO and HANEMAN—7.

*Opposed*—None.