**SHULTON, INC., a New Jersey corporation, Plaintiff,**

v.

**OPTEL CORPORATION, a Delaware corporation, et al, Defendants.**

**Civ. A. No. 85–2925.**

United States District Court,
D. New Jersey.

Oct. 28, 1988.

John C. Fricano, Richard L. Brusca, Skadden, Arps, Slate, Meagher & Flom, Washington, D.C., for plaintiff.

John M. Desiderio, Bass & Ullman, New York City, for defendants Optel Corp., Jerald K. Rome and H.L. Moore Drug Exchange.

---

Ronald C. Rak, Joseph Bucklery, Sills, Cummis, Zuckerman, Radin, Tischman, Epstein and Gross, Newark, N.J., for defendants Interstate and Spielfogel.

## OPINION AND ORDER

POLITAN, District Judge.

This matter comes before the Court on defendants' *in limine* motion to consider the appropriate scope of plaintiff's proof of damages at trial. This Court determines that, assuming liability is established at trial, any damage award will be calculated by the difference between the domestic market price and the fraud-induced export price paid by the defendants.

This proceeding was commenced by plaintiff as an action for a permanent injunction and damages arising out of the alleged conspiracy of defendants to defraud plaintiff. Plaintiff, Shulton, Inc. (Shulton) is a New Jersey corporation engaged in the manufacture and sale of personal care and grooming products. Defendant Optel Corp. (Optel), one of several defendants named in the complaint, is engaged in the business of buying and distributing health and beauty aids for sale in the foreign or domestic markets.

Plaintiff's products are distributed in both the domestic and foreign markets. Due to lower overhead and other factors, customers distributing Shulton merchandise exclusively in foreign markets are charged prices substantially lower than domestic distributors. Plaintiff contends that from October 1979 to mid–1980 the defendants engaged in a scheme to induce plaintiff to sell merchandise for resale in the domestic market at the discounted export price. At the time of purchase, defendants indicated to plaintiff that the goods purchased would be resold only in foreign markets. Plaintiff states, however, that defendants never intended to export the merchandise; in fact, the goods were resold in the domestic market at a price much lower than Shulton's domestic market price. Plaintiff alleges that the defendants' conduct violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* (1982), the New Jersey Racketeering Act, N.J.Stat. § 2C:41–1 *et seq.* (1982), and the common law of the State of New Jersey. If these substantive violations are proven at trial, plaintiff claims that it is entitled to damages suffered as a result of the defendants' fraudulent conduct.

It is well established that damages may be awarded upon a finding of civil liability under the RICO statutes. *See Sedima S.P.L.R. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); 18 U.S.C. § 1961 *et seq.* (1982); N.J.Stat. § 2C:41–1 *et seq.* (1982). The provision for relief under the United States statute,[1] 18 U.S.C. § 1964(c), provides that:

> [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the costs of the suit, including a reasonable attorney's fee.

A review of the recent cases awarding damages under this provision shows that there is no single formula for determining the appropriate measure of damages upon finding a violation of § 1962. Courts generally attempt to ensure that the victim receives full compensation for all injuries sustained as a result of defendants wrongful acts. *See, e.g., Carter v. Berger,* 777 F.2d 1173, 1176 (7th Cir.1985); *cf. Arrington v. Merrill Lynch, Pierce, Fenner & Smith,* 651 F.2d 615, 620–21 (9th Cir.1981). In calculating an appropriate award, courts consider the underlying predicate acts, the injuries in fact suffered and analogies to appropriate common law remedies in the forum state. Shaw, *RICO Damages— Where the Injury is to Business or Property, Almost anything Goes,* 6 RICO L.Rptr. 800, 801 (1987) (collecting cases). A determination of damages, therefore,

---

1. The New Jersey Racketeering statute contains an identical provision for damages. *See* N.J. Stat. § 2C:41–4(c).

necessarily varies with the facts of each case.

In calculating an appropriate damage award, the first step is to determine when plaintiff was actually injured as a result of defendants' fraudulent conduct.[2] At the time of the original transactions, defendant induced plaintiff to sell goods for domestic distribution at the price normally charged for goods being exported. Plaintiff's willingness to sell at this lower price was based on defendants' representations that the merchandise would be sold only in foreign markets. Had defendants' actual intent to distribute the goods in this country been apparent at the outset, they would have been required to pay the higher domestic price. Because of defendants' misrepresentations at the time of sale, plaintiff was wrongfully deprived of the price it had established for merchandise to be sold domestically. Plaintiff's injury, then, occurred at the time of sale. From that point, plaintiff was entitled to, but did not receive, the higher domestic price for goods purchased by the defendant and distributed in the domestic market.

Defendants argue that this Court should limit the recovery of damages to the lost sales in the domestic market resulting in actual lost profits. This theory would limit plaintiff's recovery to solely consequential damages. Several courts have awarded consequential damages in a RICO action to a plaintiff injured by fraud using a "lost profits" theory. This recovery, however, is granted in addition to an award of general damages under the "benefit of the bargain" rule or the "out of pocket" rule. In *DeMent v. Abbott Capital Corp.*, 589 F.Supp. 1378 (N.D.Ill.1984), the court indicated that lost profits resulting from a fraudulent stock transaction may be recovered in addition to rescission and return of monies paid for the execution of stock warrants. *See id.* at 1385–86; *see also Ford Motor Co. v. B & H Supply, Inc.*, 646 F.Supp. 975, 999 (D.Minn.1986) (damages

included injury to business reputation and goodwill, as well as lost profits); *Wang Laboratories, Inc. v. Burts*, 612 F.Supp. 441, 444 (D.Md.1984) (same).

The "lost profits" theory is not an appropriate measure of general damages in this case because it focuses on the ultimate consequences of the fraudulent conduct (*i.e.*, the lost sales) rather than the initial fraudulent inducement to contract. The proper point at which to measure plaintiff's damages is the time of injury. Plaintiff's primary injury occurred at the time of sale, when it was wrongfully deprived of the price it set for domestic goods. Presumably, plaintiff was also injured because of lost sales in the domestic market as a result of defendants' fraudulent diversion of goods. This, however, is a secondary consideration and cannot constitute this Court's principal award. It would be manifestly unfair to require an innocent plaintiff to prove, with reasonable certainty, every lost sale occasioned by defendants' fraudulent conduct.[3]

Courts in New Jersey generally follow the expectation or benefit of the bargain theory to measure damages in an action for money damages for fraud. *See Zeliff v. Sabatino*, 15 N.J. 70, at 74–75, 104 A.2d 54 (1954); *B.F. Hirsch v. Enright Refining Co., Inc.*, 751 F.2d 628, 634 (3d Cir.1985). In *Zeliff*, the New Jersey Supreme Court determined that damages incurred as a result of fraudulent misrepresentation "are to be assessed in the amount of the loss occasioned by the misrepresentation." *Zeliff*, 15 N.J. at 74, 104 A.2d 54. In that case, plaintiff had purchased investment property based on specific representations of the defendant seller. The plaintiff later discovered that the value of goods exchanged was actually lower than had been represented. The court determined that plaintiff was entitled to the benefit of the bargain and should be reimbursed for "the difference between what he paid for the property and the diminution in value stem-

---

**2.** For the purposes of this opinion, I assume that defendants' liability has been established.

**3.** In addition, the Court rejects defendants' argument that damages should be reduced by varia-

ble costs (*i.e.*, marketing, research, sales, and advertising expenses), plaintiff otherwise would have incurred had Shulton sold the merchandise to domestic distributors.

ming from the false statement." *Id.* at 76, 104 A.2d 54. Similarly, in *B.F. Hirsch*, the court held that the benefit of the bargain theory is an appropriate measure of damages for fraud. 751 F.2d at 634. There, the defendant wrongfully retained service fees after representing to plaintiff that no such fee would be charged. The Court stated that the damages resulting from the fraud should put the parties "in the same position as if the [agreement] had been fulfilled." *Id.*

In general, a damage award for fraud should compensate the plaintiff for every injury which is the natural and proximate result of the fraud. *See Zeliff*, 15 N.J. at 73, 104 A.2d 54. In the instant case, the plaintiff seller was injured by the fraud of the defendant buyers at the time of sale. In such case, the seller is permitted to recover the difference between the price paid and the actual market value of the property. *See* D. Dobbs, *Handbook on the Law of Remedies* § 9.2, at 598 (1973). In *Ortho Pharmaceutical Corp. v. Sona Distributors, Inc.*, 663 F.Supp. 64 (S.D.Fla. 1987), a case similar to the one at bar, the court awarded damages using the benefit of the bargain theory. In that case, the defendants had obtained pharmaceuticals from the plaintiffs at below domestic market prices based on the fraudulent misrepresentations that the merchandise would be sold abroad. In fact, the goods were diverted by the defendants and resold domestically. Plaintiffs prevailed on the merits of their common law fraud and statutory theft claims. The court found that plaintiff was entitled to damages based on the "benefit of the bargain formula": the difference between the fraud induced price and the price plaintiff would have received absent the fraud. *See* 663 F.Supp. at 65–66, 67.

An award calculated by the "benefit of the bargain" does not constitute automatic damages and will not overcompensate the plaintiff for any losses it sustained. Defendant notes that an award of automatic damages was rejected by the Supreme Court in *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 561–62, 101 S.Ct. 1923, 1926–27, 68 L.Ed.2d 442 (1981).

Unfortunately for defendant, *J. Truett* is not controlling. That case is an antitrust action where the buyers asserted price discrimination claims against manufacturers. As a result of the discriminatory pricing practices, buyers claimed damages for lost sales. The case is inapposite because no Clayton Act violation is alleged in the instant Complaint and there are no facts in *J. Truett* indicating a fraud induced transfer of goods from manufacturer to buyer.

This issue treads on new legal ground, as the cases on point are few. While all parties raise plausible arguments to support their positions, plaintiff's argument is more logical and reaches a more equitable result. If liability is proven at trial, defendant should not be allowed to retain the profits of their fraudulent conduct. Therefore, the proper measure of damages based on these facts is a modified benefit of the bargain theory: the difference between the fraud induced export price and the domestic price plaintiff would have received absent the defendants' misrepresentations.

SO ORDERED.