PETER NANOS ET AL. *vs.* JOHN F. HARRISON.

Third Judicial District, New Haven, June Term, 1922.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

Our rule—expressed in § 21 of the Code of Professional Ethics—that an attorney may not act in the dual capacity of counsel and witness, is a wholesome one, essential to the maintenance of our professional standards, and trial courts should see that counsel conform to it in letter and spirit.

An untrue statement recklessly made, which was intended to influence the conduct of another, as it did, and to his loss and damage, presents a clear case of constructive fraud, although the maker of the statement believed it to be true but without any reasonable ground therefor.

Damages are recoverable for such fraud even though the statement was made in connection with an oral contract unenforceable because of the statute of frauds.

The plaintiffs testified that the defendant offered them a parol lease of realty for five years with the privilege of renewal for five years more, and that thereafter, in reliance upon the defendant's express representation that he would give them immediate possession of the premises, they ordered certain apparatus for the premises leased, as the defendant advised them to. The defendant could not lease or give possession of the premises because they were already leased, and in consequence the plaintiffs suffered a loss upon their order for apparatus, for the recovery of which they brought suit. The trial court ordered a nonsuit, on the ground that the action rested primarily on the oral contract of lease. *Held* that this ruling was erroneous, since the gist of the action was the defendant's fraudulent representation, the oral lease being merely a fact in the history of the transaction.

Argued June 6th—decided July 7th, 1922.

ACTION to recover damages caused by the alleged false and fraudulent representations of the defendant respecting a lease of real estate owned by him, brought to the Superior Court in Fairfield County where the plaintiff was nonsuited (*Haines, J.*), and from the refusal to set aside such judgment the plaintiff appealed. *Error and new trial ordered.*

*Albert A. Goldner*, for the appellants (plaintiffs).

*C. Milton Fessenden*, for the appellee (defendant).

WHEELER, C. J.   Mr. Goldner, who must have known that he would be a necessary and an important witness in the case for the plaintiffs, continued to act as counsel and sole counsel for the plaintiffs, and secured from defendant's counsel a stipulation that his written statement might be admitted in evidence, and that the right to cross-examine him should be waived. The statement was subsequently admitted in evidence. Defendant's counsel should not have made this stipulation, and the trial court should not have permitted Mr. Goldner to continue to act as counsel and witness in the case.  The course taken was in violation of § 21 of the Code of Professional Ethics, which provides: "When a lawyer is a witness for his client except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel.  Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."  82 Conn. 709.  Our rule has always been that counsel may not act in the dual capacity of counsel and witness. *Thresher* v. *Stonington Savings Bank*, 68 Conn. 201, 206, 36 Atl. 38.  The rule is a wholesome one and essential in the maintenance of our professional standard.  Counsel

must conform to it in letter and spirit, and trial courts should see that they do.

The evidence upon which the nonsuit was granted fairly supports the following facts: At plaintiffs' request, Mr. Goldner, their attorney, saw defendant and inquired of him if his premises 506 Atlantic Street, Stamford, were for rent. Defendant replied they were, and asked him to take up the matter with defendant's wife. This the attorney did and informed defendant's wife that the lease to the present occupant was good so far as the records went, but she said she could lease the premises despite this. The attorney and defendant's wife finally agreed upon the terms of lease except as to certain improvements. Thereafter Pappas, one of the plaintiffs, obtained estimates as to the cost of equipment which plaintiffs contemplated making upon the premises. On February 27th, 1920, Pappas and Mr. Goldner met defendant, and they agreed upon these improvements.

The terms of the lease as agreed upon by defendant's wife and Mr. Goldner were gone over carefully, and defendant approved of them. The term of this lease was five years with the right to renew for an additional five years. Pappas then informed defendant that unless he made his contracts with the contractors, with whom he had already negotiated, it might cause delay and loss to him. Defendant replied, "You go on and get them started and the lease will be drawn on Monday" (March 1st). Pappas said he had to spend several thousand dollars on these contracts, and defendant said you go ahead and the lease will be signed Monday and you can get in at any time after that.

On March 15th following, defendant's attorney notified Mr. Goldner that defendant could not lease the premises, and defendant refused to so lease. Plaintiffs had already paid $2,000 on one of these contracts.

By great effort they succeeded in having this contract cancelled and received back $800 of the $2,000. The plaintiffs made this contract in reliance upon defendant's representations, which were untrue, in that at the time they were made there existed a valid lease of these premises, which fact defendant either knew or ought to have known, and upon defendant's direction to them to go on and make their contracts for equipment.

The trial court might fairly conclude from these facts that defendant and plaintiffs made a parol lease for five years with the privilege of renewing for five more, and that, after the lease was made, in reliance upon defendant's express representations that he would give immediate possession of the premises and upon his direction so to do, plaintiffs ordered certain apparatus for the premises leased. The representation that defendant could give possession was untrue. Defendant could not lease or give possession of the premises because they were already leased. The plaintiffs in consequence of their reliance upon this representation and of the direction of defendant to them, ordered the apparatus and suffered the loss for the recovery of which this action was brought. The defendant was the owner of the premises. He either knew or was bound to know whether he could lease the premises and give immediate possession of them to the plaintiffs. His making of this statement which was untrue and upon which he intended plaintiffs to rely, and upon which they did rely, to their damage, presents a clear case of constructive fraud. The statements were made recklessly, and even though made under a belief in their truth, there was no reasonable ground for their making. *O'Neill* v. *Conway,* 88 Conn. 651, 92 Atl. 425; *Scholfield Gear & Pulley Co.* v. *Scholfield,* 71 Conn. 1, 19, 40 Atl. 1046; *Schlechter* v. *Felton,* 134 Minn. 143, 158 N. W. 813.

The only reason for the granting of the nonsuit, and the only reason which defendant urges in support of the judgment of nonsuit, is that this cause of action in its proof indirectly involves reliance upon this lease, which was parol and hence unenforceable. Coke says that when fraud and damage concur an action lies; and our law exemplifies this. The trial judge based his decision upon a wrong premise. He said: "The action is based primarily upon the proposition that the plaintiffs had a verbal contract with the defendant for a lease of a piece of property for a period of five years, with five years option." The action is not one to enforce the contract of lease either directly or indirectly. The action is based upon facts which grew out of the making of the lease, but it is wholly collateral to it. The proof of the constructive fraud necessarily involves the proof of the making of this oral lease, but this is not offered to enforce the lease, but simply as a fact in the history of the transaction. Then, through reliance upon defendant's fraudulent representation and direction, plaintiffs made certain contracts which involved them in loss. These contracts had to do with the premises leased. But recovery of the loss arising out of their making has no more to do with the enforcement of the contract of lease, than if the contracts had related to other property than that leased. If the action will not lie because this contract of lease was parol, the statute of frauds, which was intended to prevent fraud, will serve as an aid in helping to perpetrate a fraud. If a testator orally agrees to give A a legacy and is prevented by the fraud of B, or if one is prevented from making a sale he would have made to A, through the fraud of C, an action will lie. We see no substantial difference in principle between these instances and that in the instant case. There are few authorities directly in point. In *Lamm* v. *Port De-*

*posit Homestead Asso.*, 49 Md. 233, the attorney of the defendant association offered for sale certain premises of the association and represented that the possession would be given in three months. The appellant bid in the premises and, upon defendant refusing to convey, sued to recover damages from loss of rent and expenses incurred in obtaining possession. In holding that the action was not barred by the statute of frauds, the court said (p. 240): "The fourth section of the statute of frauds refers by its terms and meaning to contracts for the sale of lands, &c., or any interest in or concerning them, and not to collateral or independent undertakings outside of such contracts, and does not apply to the representation, if any, made at the sale in question. . . . If the representation were made fraudulently to induce the purchaser to bid for the property, and he was induced thereby to buy the same and sustained damage, he would be entitled to recover for the tort, fraud or deceit." In *Rice* v. *Manley*, 66 N. Y. 82, one S contracted, by parol, to sell and deliver to plaintiffs a quantity of cheese. The contract was within the statute of frauds, but would have been performed by S had it not been for the fraud of the defendant who made S believe that plaintiffs did not want the cheese, and in consequence S sold it to defendant. It was held that the action lay against the defendant for damage suffered by the plaintiffs for this fraud. In *Angell* v. *Duke*, 32 L. T. (N. S.) 25, the defendant, in the course of negotiation for a lease, offered to make certain repairs if plaintiff would take possession. Plaintiff brought an action against defendant for damages for his failure to make these repairs, and it was held that this agreement was collateral to the contract of tenancy and severable from it, and hence not within the fourth section of the statute of frauds.

The principle upon which these cases were decided is

the principle upon which we decide this case. There is no conflict between them and the statute of frauds, for they are entirely outside of it. The defendant relies almost exclusively upon the authority of *Dung* v. *Parker*, 52 N. Y. 494, which was an action to recover damages occasioned by the false and fraudulent representations of defendant, that as agent he had authority to contract and did contract by parol to lease certain premises to the plaintiff for the term of two years. The court held that the action would not lie since the contract was by parol, and if defendant had possessed authority to make it, it would have conferred no right upon the plaintiff. This case stands, as far as we have ascertained, alone. Subsequent decisions in the State of New York have weakened, if not destroyed, its authority in that jurisdiction. We find Browne on the Statute of Frauds (5th Ed.) § 135a, thus comments upon this case: "It will be observed that *Rice* v. *Manley*, in recognizing the oral contract as an existing relation, and giving the plaintiff damages for the fraudulent representation by which he was deprived of the benefit of it, is in opposition to the reasoning, if not the decision, of *Dung* v. *Parker*, and another decision in the Court of Appeals later than any of the foregoing seems to tend in the same direction. This is the case of *Mooney* v. *Elder*, 56 N. Y. 238."

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.