LOUIS SCHLESINGER COMPANY, A NEW JERSEY COR-
PORATION, PLAINTIFF-APPELLANT, v. WILLIAM H.
WILSON, DEFENDANT-RESPONDENT.

Argued October 15, 1956—Decided November 19, 1956.

*Mr. Alan V. Lowenstein* argued the cause for the plaintiff-appellant (*Messrs. Lowenstein, Del Tufo & Callahan,* attorneys; *Mr. Howard T. Rosen,* on the brief).

*Mr. Charles L. Bertini* argued the cause for the defendant-respondent (*Mr. Robert K. Hartmann,* on the brief).

The opinion of the court was delivered by

BURLING, J. In 1953 defendant Wilson posted a sign on a 60-acre tract of land in Wayne Township, New Jersey, indicating a desire to sell the same. He and his wife owned the land by the entireties. Roger Williams, a salesman

employee of the plaintiff corporation (dealing in real estate brokerage) was attracted by the selling opportunity and with Wilson's consent showed the property to several prospects between September 1953 and December of 1954. It was not until the latter month that the parties entered into an agreement whereby plaintiff undertook to procure a purchaser for the land. The resultant accord was entirely oral and it is agreed that Wilson promised to pay plaintiff 10% of the purchase price as a commission if its efforts were successful.

Unknown to plaintiff or its employee Williams was the fact that Wilson on November 30, 1954 had granted an option of purchase on the same property to Raymond Builders. Nevertheless, Wilson saw fit to withhold this information when the oral agreement was made and in fact subsequently represented to plaintiff that it was within his power to consummate a sale of the 60-acre tract. It was not until January 6, 1955, when plaintiff had produced a purchaser and the parties had, according to the special jury verdict herein, agreed upon the terms of purchase and sale, that plaintiff and the purchaser were informed of the outstanding option. Only a few days before, Wilson, through his attorney, sought to extinguish the option by returning the sum paid to the optionee on the ground that the property was not owned by Wilson's corporation which had granted the option but by Wilson and his wife individually, and the latter had indicated her unwillingness to convey her interest.

Considerable disappointment pervaded the atmosphere when this revelation was disclosed after the purchaser and Wilson had agreed to the purchase terms. Plaintiff advised Wilson that its agreement had been fulfilled and demanded a $7,200 commission. (The agreed purchase price was $72,000.) This was refused and suit initiated.

The complaint was in two counts, the first seeking recovery upon the basis of an oral contract and the second sounding in tort for deceit. The parties reached a remarkable degree of accord in the pretrial order by stipulating not only the oral agreement but also the amount of damages,

if any, at $7,200. At the close of plaintiff's case the defendant moved to dismiss the first count because the agreement was not in writing, and the second, evidently, for a failure of proof. The trial court granted the motion as to the deceit count but withheld action on the first count. Defendant then made his presentation and himself supplied any deficiency in the evidence on the second count. On cross-examination Wilson stated:

"Q. I show you that same deposition and point to a portion of your testimony and ask you now did you state to a representative of Louis Schlesinger Company that it was within your power to consummate a sale of that sixty-acre tract in Wayne Township if terms and conditions agreeable to you were arrived at? A. Yes.

Q. When did you say that? A. I said that during the conference and I also said it in negotiations prior to the conference on January 6.

Q. You said it to Mr. Williams? A. Yes.

Q. And at the time you said it to Mr. Williams prior to the conference was the purported option in favor of Raymond Builders then outstanding? A. Yes."

A motion to reinstate the second count was denied; special interrogatories were submitted to the jury which found specifically that Wilson had agreed to the offer and terms made by the purchaser. The trial court then granted defendant's motion to dismiss the first count because *R. S.* 25:1–9 pertaining to brokerage commissions had not been fulfilled. The appeal was brought before this court by our certification prior to a review by the Superior Court, Appellate Division.

Three questions are presented:

1—Was the agreement required to be in writing under *R. S.* 25:1–9?

2—If so, does the alleged fraud of defendant remove the bar of the statute?

3—Was it error to dismiss the second count of the complaint?

*R. S.* 25:1–9 provides, *inter alia:*

"Except as herein otherwise provided, no broker or real estate agent selling or exchanging real estate *for or on account of the owner* shall be entitled to any commission for such sale or exchange, unless his authority therefor is in writing, signed by the owner or his authorized agent * * *." (Emphasis supplied)

Plaintiff argues that Wilson is not "the owner" within the statutory meaning, and therefore the agreement need not be in writing to entitle it to a commission. The reasoning is that Wilson is a tenant by the entirety and that although husband and wife together would be "the owner," neither can assert that status individually. There is support for and against this proposition in our case law—a conflict which should be resolved.

■ This statute was originally enacted as *chapter* 215 of the *Pamphlet Laws* of 1873 (*p.* 50). It was not part of the English Statute for the Prevention of Frauds and Perjuries passed in 1677 as 29 *Chas.* II (see *R. S.* 25:1–5) but represents an extension of the underlying doctrine of that statute to the field of real estate commissions. 2 *Corbin on Contracts* (1950), *sec.* 295, *p.* 77; 12 *C. J. S., Brokers,* § 62a, *p.* 140; *cf. Conklin v. Kruger,* 79 *N. J. L.* 326 (*Sup. Ct.* 1910). The statute has been twice amended (*L.* 1911, *c.* 331; *L.* 1918, *c.* 273), both times to relieve the statute of a decided harshness toward real estate agents. The first amendment permitted recovery of commission where a written agreement was executed either before or after sale of the property. The second amendment incorporated a five-day notice provision whereby the agent or broker, following an oral authorization, might document the agreement in writing and forward it to the owner. See Lasser, *"The Real Estate Broker's Commission,"* 10 *Rut. L. Rev.* 410, 413 (1955).

■ The basic purposes of the statute were not affected by the amendments of 1911 and 1918. In *Sadler v. Young,* 78 *N. J. L.* 594, 597 (*E. & A.* 1910) Chief Justice Gummere noted:

"* * * The statute, as we read it, has two, and only two, purposes: *First*, to protect the owners of lands against fraudulent claims for commissions of real estate agents or brokers, and to relieve such owners from liability, unless that liability is evidenced by their own signatures, or those of their duly authorized agents. *Second*, to discourage real estate agents or brokers from making contracts for the sale of lands which shall be binding upon the owners thereof, unless authority to make such contracts is conferred by the owners in writing, under their hands, or the hands of their authorized agents * * *."

■ Where the writing requirement is not fulfilled the agent is not " 'entitled to any commission.' " *Stout v. Humphrey,* 69 *N. J. L.* 436 (*E. & A.* 1903).

The statute has been abused by those for whose protection is was designed, *Noonan v. Henry,* 97 *N. J. L.* 447, 448–449 (*Sup. Ct.* 1922), and some voices would advocate outright repeal, not without thoughtful reason, *Lasser, supra,* 10 *Rut. L. Rev.,* at 422–423. But compare *Deevy v. Porter,* 11 *N. J.* 594 (1953). The courts themselves have attempted to attain a requiem of substantial justice through interpretation of *R. S.* 25:1–9, but our study reveals a sacrifice of purpose to match the ingenuity of contestants. The cases relied upon by plaintiff to indicate that defendant is not "the owner" because of his interest by the entirety present an excellent study of parties seeking shelter either within or without the statute.

The pattern is so obvious that each case need not be detailed. The initial confusion seems to have been caused by *Murphy v. Lewis,* 76 *N. J. L.* 141 (*Sup. Ct.* 1908), where one of the two owners by the entireties had engaged the broker by written agreement. The broker performed, his commission was refused, and suit was brought against the wife who had executed the agreement and the husband who had not. They defended on the ground that the broker did not have a written agreement with "the owner" of the property. The holding was that a tenant by the entirety is not "the owner" and that no recovery could be had upon an agreement with one who is not "the owner." The latter position seems untenable in two respects: first, it would permit one not entitled to the protection of the statute to assert it as a defense, and secondly, it implies that a broker could never effectively contract with a person who was not "the owner." The decision was followed in *Ryer v. Winter,* 77 *N. J. L.* 441 (*Sup. Ct.* 1909), where the defendant had no interest in the property whatsoever but this case was reversed by the Court of Errors and Appeals (81 *N. J. L.* 575 (1911)) following its decision in *Sadler v. Young, supra.* In *Sadler* corporate realty was involved; the presi-

dent of "the owner" had a written agreement with the broker, and when he was sued for the commission he argued that the contract had not been signed by "the owner." The court held that those who were not protected by the statute could not invoke it as a defense. Hence one who engages the broker and who is not "the owner" cannot assert that the broker is not entitled to his commission because the owner of the property has not executed a written agreement. *Feist v. Jerolamon,* 81 *N. J. L.* 437 (*E. & A.* 1910); *Joffe v. Cohen,* 104 *N. J. L.* 209 (*E. & A.* 1928). *R. S.* 25:1-9 is not applicable in such instances. *Sadler v. Young, supra,* 78 *N. J. L.,* at *page* 598. See also *Waring v. Jobs,* 104 *N. J. L.* 158 (*E. & A.* 1927). This removed the objectionable feature of *Murphy* and *Ryer* in the former Supreme Court in this respect.

Persons *orally* engaging brokers have gone to great pains in the other direction to indicate that they are indeed "the owner," thus requiring that the agreement be in writing under *R. S.* 25:1-9. To some the argument was completely unavailing because they had no interest in the property whatever, *Brown v. Winter,* 80 *N. J. L.* 632 (*Sup. Ct.* 1910), affirmed *per curiam,* 82 *N. J. L.* 729 (*E. & A.* 1912); *Breitbart v. Lurich,* 98 *N. J. L.* 556 (*E. & A.* 1923). And a husband who had only an inchoate right of curtesy was not "the owner" so as to require a written agreement. *Posner v. Shapiro,* 102 *N. J. L.* 408 (*E. & A.* 1926).

Thus, where the person has engaged the realtor by written agreement the typical defense is that he is not "the owner" and cannot be charged with the commission; where the understanding is oral the pattern is to bring oneself within the statute as "the owner."

Finally, in *J. I. Kislak, Inc., v. Judge,* 102 *N. J. L.* 506 (*Sup. Ct.* 1926), a factual situation similar to *Murphy v. Lewis, supra,* was presented—one of the tenants by the entireties engaged the realtor by written agreement. The other refused to convey and the commission was in suit. The court followed *Murphy* on the holding that defendant was not "the owner," but rather than deny commission be-

cause "the owner" had not signed the agreement as in *Murphy,* the court held the statute was inapplicable and that the claim was proper. *Taub v. Shampanier,* 95 *N. J. L.* 349 (*Sup. Ct.* 1921), was cited in support of the conclusion, but the holding in *Taub* was that a tenant by the entirety is within the statutory compass of "owner."

██ We have no quarrel with the result in *Kislak,* but to lend our support to the proposition that a tenant by the entirety is not within the statutory compass of "owner" would sanction a departure from the basic purpose of the law. *R. S.* 25:1–9 requires a writing in every situation except where the person engaging the broker has no legal or equitable interest in the property which is to be marketed (and except as *R. S.* 25:1–9 otherwise provides via the 1918 amendment, *supra*). The party may not thereafter successfully contend that the statute precludes the payment of a commission because he is not "the owner" of the property placed in the realtor's hands and for these reasons:

1—If he has no legal or equitable interest in the property the statute has no application, and

2—If he has an interest in the property he must be presumed to be in a position to convey that which he seeks the agent to sell and therefore upon his own representation he comes within the statutory term.

The emphasis is to be placed upon the requirement of a writing, an approach which endeavors to manifest the meaning and underlying purpose of the statute.

In the circumstances of this case the statute required a written agreement, and in the absence thereof the plaintiff is not entitled to its commission.

██ Secondly, it is urged that because of defendant's misrepresentation that he was in a position to consummate a sale of the property *R. S.* 25:1–9 should not be applicable. We are cited to that line of cases which refuse to recognize the statute of frauds as a defense when it would operate to bring about grossly inequitable results. See, *e. g., Cauco v. Galante,* 6 *N. J.* 128 (1951). No case has been cited to us where this essentially equitable relief has been afforded

in a case falling within *R. S.* 25:1–9. *Cf. Cobb v. Bowes,* 104 *N. J. L.* 615 (*E. & A.* 1928). This observation would not deter the possibility but here the alleged deceit did not permeate the contractual relationship between the parties, and in this sense it did not inhere in the transaction. See *Alexander v. Alexander,* 96 *N. J. Eq.* 10 (*Ch.* 1924); 3 *Pomeroy on Equity Jurisprudence* (*5th ed.* 1941), *sec.* 921, *p.* 618; 2 *Williston on Contracts* (*Rev. ed.* 1936), *sec.* 533A, *p.* 1543. The misrepresentation complained of did not go to the existence or non-existence of the requirement of a writing. The plaintiff broker better than anyone else knew that this was necessary to entitle it to a commission. Further, no benefit has accrued to the defendant through the efforts of plaintiff which would bestir the conscience of the court to dislodge or compensate for the retention of an unjust enrichment. See *Banker v. Henderson,* 58 *N. J. L.* 26 (*Sup. Ct.* 1895); *cf. Leimbach v. Regner,* 70 *N. J. L.* 608 (*Sup. Ct.* 1904). The gravamen of the deceit charge is that plaintiff was not informed of the option and persisted in its efforts to find a purchaser upon the representation that defendant stood ready to consummate a sale.

■■ Although we think the fraud complained of is insufficient to remove the bar of the statute, there is no reason why the defendant should not be directed to respond to the second count which sounds in tort. *Cf. McCue v. Deppert,* 21 *N. J. Super.* 591 (*App. Div.* 1952). The charge is not made to enforce the contents of the oral agreement but to compensate the plaintiff for its loss engendered by the deceit. *Nanos v. Harrison,* 97 *Conn.* 529, 117 *A.* 803 (*Sup. Ct. Err.* 1922). The confidence arising from a principal-agent relationship is not charted on a one-way street. Good faith works in both directions. *Bonnell v. B. & T. Metals Co.,* 81 *N. E.* 2d 730 (*Ohio Ct. App.* 1948); *cf. Silverman v. Bresnahan,* 35 *N. J. Super.* 390 (*App. Div.* 1955).

■■ The necessary constituents of an action in deceit are proverbial: a false representation, knowledge or belief by the defendant of the falsity, an intention that the plaintiff

act thereon, reasonable reliance in acting thereon by plaintiff, and resultant damage. *Prosser on Torts* (1st ed. 1941), *sec.* 85, *pp.* 705–706; see *Fischetto Paper Mill Supply, Inc., v. Quigley Co., Inc.,* 3 *N. J.* 149 (1949); *Kosobucki v. McGarry,* 104 *N. J. L.* 65 (*E. & A.* 1927); *Cowley v. Smyth,* 46 *N. J. L.* 380 (*Sup. Ct.* 1884). The burden of proof is not a light one to sustain. *Racanati v. Black Diamond Stevedoring Co.,* 130 *N. J. L.* 261 (*Sup. Ct.* 1943), affirmed 132 *N. J. L.* 250 (*E. & A.* 1944). Clearly it was defendant's duty to inform plaintiff of the option agreement which was executed prior to the oral understanding. *Cf. Restatement, Agency, sec.* 435 (1933), and note especially *comment (c)*; *Romine v. Greene,* 13 *N. J. Super.* 261 (*App. Div.* 1951). That duty was not fulfilled. On the contrary, the failure to disclose was aggravated. Defendant encouraged plaintiff to continue its efforts by representing that he stood ready to convey the title when a satisfactory purchaser was produced. The trial court erred in refusing to reinstate the second count.

Should the second count be resolved favorably to plaintiff the damages will be $7,200. The parties have stipulated this. It is unnecessary, therefore, to consider the measure of damages that would otherwise be applicable to the instant situation. *Cf. Zeliff v. Sabatino,* 15 *N. J.* 70 (1954).

The cause will be remanded for reinstatement of the second count of the complaint and appropriate proceedings thereon. So much of the final judgment pertaining to the second count is reversed and in all other respects affirmed. Costs will abide the remand.

*For reversal in part*—Chief Justice VANDERBILT, and Justices BURLING and JACOBS—3.

*For affirmance*—Justices HEHER and WACHENFELD—2.