ACME FINISHING CO., Inc., a corporation of the State of New York, Plaintiff,

v.

ROBERTSON BROTHERS, INC., a corporation of the State of New Jersey and A. W. Robertson, Defendants.

Civ. A. No. 6–62.

United States District Court
D. New Jersey.

July 13, 1964.

---

Crummy, Gibbons & O'Neill, by John T. Dolan, Newark, N. J., for plaintiff.

William V. Breslin, Englewood, N. J., for defendants.

COOLAHAN, District Judge:

This action was instituted under diversity of citizenship jurisdiction and tried before the Court without a jury. It involves the purchase and sale of a Gullberg & Smith type gathering machine, which machines are made exclusively for the bookbinding industry but with certain adaptations can be effectively used to collate and box greeting cards.

The plaintiff, Acme Finishing Co., Inc., is a New York corporation and was engaged in the business of collating, boxing and shipping greeting cards. Its president, Irving Bierenberg, was its primary managing officer.

The defendants, Robertson Brothers, Inc., a New Jersey corporation and Arno Robertson, its agent, are engaged in the business of selling used machinery for printing and bookbinding, as well as collating. Generally there were two size gatherers in common usage, namely the 9 X 12 inch and 12 X 16 inch machines. The defendants had previously sold such machines of the 9 X 12 inch calibre to the greeting card industry, but had never sold a 12 X 16 inch machine for this purpose prior to the sale in question.

Acme Finishing Co., Inc., at the time of this sale had purchased in 1957 and

had in use a 9 X 12 inch Gitzendanner machine. The plaintiff's first communication with the defendant was in the latter part of 1958 when Mr. Bierenberg called the Robertson Company to inquire as to whether a 9 X 12 inch Gitzendanner was available. He communicated with Mr. Robertson because of an advertisement appearing in a trade weekly called The Printing News. Robertson came to the plaintiff's plant in the latter part of 1958 and was shown the Gitzendanner machine already in use. Mr. Bierenberg informed Mr. Robertson he was looking for a machine which had a greater capacity with a minimum of twenty-one pockets. In October, 1960 Robertson called Bierenberg and informed him he had a twenty-eight pocket machine available in the Mid-West. Bierenberg had already been informed of the existence of this machine by another broker named White who had shown him the brochure (Ex. P-1). This brochure described the said machine as follows:

"32—Pocket Gathering, Stitching and Jogging Machine: Size 12″ X 16″; Including 4 New Dexter Pockets; New Dexter 1¼″ Three-Wire Side Stitcher; With DM 2-way Automatic Jogger, Quincy, Model 230, Air Compressor, Ingersoll-Rand, Model 244X2, Air Compressor; Roots, New Acme Size 4, Blower; Complete with Accessory Motors and 10 H.P. Varidrive, Motor and Controls."

Later Bierenberg received a telephone call from Robertson in which Robertson solicited Acme's interest in the machine. However, Bierenberg declined because of the size of the machine which was listed in the brochure as 12 X 16 inch and the matter was temporarily abated.

On November 28, 1960 Robertson addressed a letter to one Roy Erickson, an employee of the Williamsburg Greetings Corporation in Massachusetts and at the same time enclosed a copy of the brochure above referred to. In that letter (Ex. P-2) Mr. Robertson described the machine as follows:

"In Chicago, we purchased a 32 pocket Dexter and G&S Combination, pictures of which are enclosed. *The information is incorrect in that 28 boxes are G&S 9 X 12.* We have sold the Dexter part of it which includes the drive, 4 pockets, 3-wire stitcher, and delivery. We can now offer the 28 pocket G&S balance . . . $8,500 "where it stands" in Chicago. This machine took care of the Owen Plant and is in a reasonable condition.

In my opinion, it might be worth your while to inspect both equipments. We will be glad to make arrangements to have you see the machine at a time convenient to you." (Emphasis added).

At or about this time Erickson was aware of the fact that the plaintiff was attempting to locate such a machine. As a matter of fact Erickson had been advised of this by Robertson by letter of October 13, 1960 (Tr. Pg. 191). He also was informed of this fact by Jack Schwartz, a friend of Bierenberg and a former employer of Erickson.

After Erickson had forwarded the letter (Ex. P-2) to the plaintiff, a conference was had in the office of the defendant corporation between the parties. Schwartz accompanied Bierenberg to that meeting. This conference was had some time between November 28 and December 6, 1960. The subject matter was a discussion of the machine located in Maywood, Illinois.

The defendant Robertson admits that during the conference Bierenberg had specified he wanted a 9 X 12 inch gathering machine. (Tr. Pgs. 193–195). At this meeting the plaintiff questioned the description in the brochure but was assured that the printed legend was mistaken and that the machine was in reality a 9 X 12 inch size. The defendant further assured the plaintiff that with certain adaptations the machine would satisfactorily perform the work the plaintiff required. It was suggested by Robertson that Erickson be hired by Acme to

inspect the machine in Illinois and both Robertson and Erickson went to Illinois on or about December 14, 1960 for this purpose.

Erickson stated in his depositions that his purpose in inspecting the machine was to ascertain whether or not the same was operable. Erickson states that he at no time was aware of the fact that the machine was a 12 X 16 inch, that his function in inspecting the machine was to ascertain whether or not the same would operate satisfactorily (See Erickson's depos. p. 11). He states he could not tell the size of the machine by observing it.

Prior to the inspection trip by Erickson, the defendant addressed a letter to the plaintiff dated December 6, 1960 (Ex. P–3) in which he outlined the payment terms of the sale for the machine. The price was to be in the amount of $8,500.00 payable $3,500.00 in cash and the balance in twelve equal monthly instalments bearing interest at 6%.

On December 14, 1960 the defendant addressed a letter to the plaintiff enclosing a conditional sales contract covering the gathering machine. The conditional sales contract, also dated December 14, 1960, (Ex. P.–5) prepared by defendant, described the machine as follows:

*"One (1) Sheridan 9 X 12"* 28-pocket F&S. Type Gathering Machine with Ingersoll-Rand Pump and accessories, all as inspected by your Mr. Erickson at the Owen Plant, Maywood, Illinois * * * $8,-500. (Emphasis added)."

Upon advice from Erickson that the machine was in operable condition with adaptations to be secured, the contract was executed by Bierenberg on behalf of the plaintiff and returned to the defendant with the plaintiff's check in the sum of $3,500.00 (Ex. P–7).

All of the documents in connection with the sale and the shipment of the machine from Chicago to the plaintiff's plant in Brooklyn, N. Y., indicated that it was a 9 X 12 inch machine. (See Ex. P–5, P–8, P–9 and P–13). In all of these documents received by the plaintiff the machine was plainly represented to be a 9 X 12 inch. Bierenberg believed at the time of the purchase and for some time thereafter that the machine in question was in fact a 9 X 12".

It is also borne out by the testimony that the defendant knew at all times that the machine was a 12 X 16 "(Tr. P. 195) and Robertson testified (Tr. P. 202) that each time the machine was represented as 9 X 12" it was a "mistake."

The machine arrived some time in early January, 1961 at the plaintiff's plant and from January through May, 1961 efforts were made to utilize it without success. Bierenberg called in the Sheridan Company, manufacturers of this particular type machinery for help in the installation and adaption to the job. In addition, Acme sought the assistance of Erickson and later, at the request of Robertson, solicited the help of one Ed Ingve whom Robertson stated was the best informed man in the country in adapting and installing this type of machine. Ingve came in from Chicago and spent several days March, 1961 in attempting to remedy the situation.

In February 1961 the Sheridan Company indicated to Bierenberg they believed the machine was a 12 X 16 inch. When this was brought to the attention of the defendant, Robertson, he informed Bierenberg that the Sheridan people were in error and had made this statement only because they themselves were interested in selling new machinery. The plaintiff said it accepted this theory and continued to employ mechanics in order to put the machine in operable condition. It was after this reaffirmance of the size of the machine that the defendant suggested Ingve be brought into the picture to rectify matters.

Monthly payments were made on the purchase price of the machine until June, 1961 at which time plaintiff was again advised by representatives of the manufacturer that the machine was in reality a 12 X 16 inch machine.

Bierenberg alleges that he then told the defendant that he had been misled and he stopped making monthly payments.

Robertson states the first time he was advised by the plaintiff that the machine was a 12 X 16 inch rather than 9 X 12 inch was by letter from plaintiff's attorney, dated September 13, 1961, yet Robertson knew all the time that the machine was a 12 X 16 inch machine. He also testified, contrary to the above in his deposition. (Robertson's depositions pg. 90).

It was not contested that the machine was never made operable and was never utilized. Despite the efforts of the various mechanics to correct the difficulty the machine never functioned in the plaintiff's production line. Plaintiff in the interim has purchased a new 9 X 12 inch machine which is in operation at present.

The plaintiff's repair bills expended to adapt and install the machine purchased from the defendant are as follows:

| | |
|---|---|
| Dismantling machine, Kamen. (Ex. P–8) | $748.12 |
| Freight bill for shipping, Transamerican (Ex. P–10) | 368.00 |
| Ingve's bill, fifty hours (Ex. P–12) | 517.54 |
| Vanderhoff bills, $37.00 each (Ex. P–17) | 72.00 |
| Warren Robertson's bill, repairs (Ex. P–18) | 112.00 |
| Lary-Weiss Electric Corp., electrical work (Ex. P–20) | 727.00 |
| Sheridan Corp., modification, etc. (Exs. P–22, 24, 25) total in evidence | 535.80 |

 The contention of the plaintiff is that the defendants practiced fraud and misrepresentation upon it in that the defendants knew, or should have known that the machine was the improper size; that they falsely represented the machine was a size which the plaintiff had requested; that the plaintiff reasonably relied upon the defendants' representation; that the defendants intended that the plaintiff rely on these representations, as a result of which the plaintiff was injured thereby. The requisite elements of fraud and misrepresentation in New Jersey are false representation as to a material fact; knowledge by the defendant that they were false when made; the statements made with the intention that the plaintiff rely thereon; reliance upon those statements, and damages resulting therefrom. See Louis Schlesinger Co. v. Wilson, 22 N.J. 576, 585, 127 A. 2d 13 (1956); Dover Shopping Center, Inc.. v. Cushman's Sons, Inc., 63 N.J. Super. 389, 391, 164 A.2d 785 (App.Div. 1960); and Bilotti v. Accurate Forming Corp., 39 N.J. 184, 206, 188 A.2d 24 (1963).

Defendants both orally and by way of letter and other writing continually represented the size of the machine in question to be 9 X 12 inch. In fact, the defendants stated that the brochure describing the machine as 12 X 16 inch was in error and that the true size of said machine was 9 X 12 inch.

It must also be reported that the defendant Robertson himself assisted in the appraising of this particular machine before it was sold at auction. He was the purchaser of the machine at the said auction and his testimony was to the effect that he knew the machine for in excess of twenty years. The machine was packed for shipping to Brooklyn by J. Spero & Company who also described the machine as 9 X 12 inch in the packing slip accompanying delivery. The machine itself was purchased by the defendants and Spero jointly at auction before sale to the plaintiff.

 From the above description and the testimony of the defendant Robertson it is clear that Robertson, while acting as agent for Robertson Brothers, Inc., made these statements as to the size of the machine with knowledge of their falsity. Robertson was aware that the plaintiff was not interested in the machine in question because the brochure identified it as a 12 X 16 inch, therefore the misrepresentations were made to the plaintiff expressly to induce it to pur-

chase this machine for its plant. The plaintiff had already rejected the offer to buy the very same machine when approached by another broker because of the size in question. However, when informed by Robertson that the machine was in fact a 9 X 12 inch and knowing that Robertson was experienced in this facet of the business for over fifty years, it made arrangements to purchase same in reliance upon the oral and written representations of the defendants. Erickson was sent to inspect the machine, not for the purpose of determining the size but to check the mechanical parts, gears and pockets as to condition and adaptability. Erickson's favorable report was based on the information that the machine was 9 X 12 inch.

The gravity of misrepresentation is pointed out by the fact that similar machines in workable condition can do the required job if they are of the proper size. Therefore, Erickson's examination of the machine was to establish its mechanical availability based on the assumption that if workable it would operate the same as the other 9 X 12 inch machines.

■ The damage to the plaintiff is graphically illustrated by the repair bills and other mechanics' invoices employed to adapt the machine for use in its business. The continued payment upon the purchase price and the subsequent payment of repair bills to Ingve was induced by the defendants' further misrepresentation of the size of the machine which occurred in February, 1961. The storage bill is not a proper element thereof, however (Ex. P-10).

■ The plaintiff also contends that they are entitled to reimbursement for the additional labor expenses incurred in manually collating the greeting cards, for which purpose the machine was purchased. This was the process they used before. However the computation of this damage is based upon estimate and speculation to the extent of the plaintiff's business and orders at that time. There is no showing that the plaintiff would have or could have obtained another machine to accomplish this task had the defendant not intervened. To allow the plaintiff both the remedy of recision and the benefit of his bargain would seem too stringent a penalty in this case. Zeliff v. Sabatino, 15 N.J. 70, 104 A.2d 54 (1954). The plaintiff has chosen to seek reimbursement for its costs and amount of sales price expended and that would place the parties in the status quo at the time of purchase and in the Court's opinion fully compensate the damaged party. See Zeliff at page 74, 104 A.2d 54.

In the light of the foregoing it is the order of this Court that the plaintiff recover judgment against the defendant in the amount of $8,680.46 and that the contract in question be rescinded.

The above will serve as findings of fact and conclusions of law in accordance with the Rules.

Let counsel for plaintiff submit an appropriate order.